## ARGUELLO *et al. v.* EDINGER *et al.*

Courts of Equity in this State possess the power to enforce the specific performance of verbal contracts for the sale of land in cases of part performance of such contracts.

Nothing can be regarded as a part performance, to take a verbal contract for the sale of land out of the operation of the statute, which does not place the party in a situation which is a fraud upon him unless the contract be executed.

Taking possession is held such act of part performance, as the party might be treated as a trespasser if he could not invoke the protection of the contract. And if, upon the faith of the contract, the purchaser should proceed to make valuable improvements, the most palpable fraud would be perpetrated if the vendor were permitted to withdraw from its execution.

The defence arising from a verbal contract for the sale of land, accompanied with acts of part performance, taking the contract from the operation of the statute, is permissible, under our system of practice, to an action of ejectment for the recovery of the premises. The only effect of this mode of asserting the rights of the defendants, instead of filing a bill in equity, is to require the Court to pass upon the questions raised by the answer in the first instance. If, upon hearing the evidence, the Court should determine there was ground for relief, it would enjoin the further prosecution of the action with its decree for a specific performance; and, on the other hand, if it should refuse the relief, it would call a jury to determine the issue upon the general denial.

Where the answer discloses the fact that the contract is not in writing, but also avers acts of part performance, which take the contract out of the operation of the statute, the answer is not demurrable.

Abell *v.* Calderwood et al., 4 Cal., 90, overruled.

APPEAL from the District Court of the Twelfth Judicial District, County of San Mateo.

The complaint is in the ordinary form of complaints in the action of ejectment.

The following is the answer of the defendant, J. P. Edinger. The suit was discontinued as to the other defendant:

"And now comes the said defendant, J. P. Edinger, and for answer to the complaint filed against him in this cause, says that he denies the said complaint, and each and every allegation therein contained, and specifically, as if each allegation were here again repeated, and each specifically denied; wherefore he prays judgment, etc.

"And this defendant for further answer to said complaint, says, that heretofore, to wit, on or about the first day of May, A. D. 1851, at the county of San Mateo aforesaid, the said plaintiffs then being the owners of said tract of land, in said complaint described, sold the following described part thereof to one William D. Harrington, now deceased, to wit: commencing at a point on the northerly end of the Laguna Grande, or Lake Raymundo, running thence easterly one mile, more or less, thence southerly about two and one-half miles, more or less, to a large madroño tree, thence westerly one-half mile, more or less, to the easterly line of the Copenger grant, thence northerly along

the line of the said Copenger grant and the said Laguna Grande, to the place of beginning, being about twelve hundred acres of land, and being the same land now fenced in, and for a long time past known as the Harrington Ranch, and including a rocky point of about one hundred acres adjoining said lake, not fenced, which said land, except said rocky point, is enclosed by a heavy worm-fence, erected by said Harrington; that said sale was so made to said William D. Harrington by the said S. M. Meses, one of said plaintiffs, who was then and is now the duly authorized attorney in fact of the others of said plaintiffs, by them thereto duly authorized to sell such land for them, and in their names, by a duly authorized power of attorney, executed and delivered to said Meses by them for said purpose; that said plaintiff, Meses, being so authorized as aforesaid, did on the day and year aforesaid, for himself and for the other plaintiffs, sell the above-described tract of land, the same being a part of the land named in said complaint, to the said William D. Harrington, for the price and consideration of five dollars per acre. The said sale was made by parol, the said Meses and the said plaintiffs alleging at the said time that it would not be proper for them to make a written conveyance of said land until they should have procured a patent for the same from the Government of the United States. The said Harrington, confiding in their representations, purchased said land by a parol contract, at and for the sum of five dollars per acre, to be paid as soon as a patent was obtained for said land from the United States as aforesaid, at which time the said plaintiffs then faithfully promised and agreed to convey to said William D. Harrington the said land, by a good and sufficient deed or conveyance in law. That in conformity with said contract of sale as aforesaid, the said plaintiffs then and there, as a part performance of the same, delivered the possession of said land to said William D. Harrington, who then with the knowledge of said plaintiffs, and with their assent and agreement, and under such color and assurance of title, entered upon said land, and proceeded to erect large and valuable permanent improvements thereon, which are of great value, to wit, of the value of fifteen thousand dollars, which said improvements consist in the erection of good and substantial dwelling-houses and barns, and in the erection of a good and permanent worm-fence around nearly the whole of said tract of land, together with divers cross and partition fences thereon, all of which said improvements were erected and constructed from timber and materials procured from lands other than the lands so purchased as aforesaid, and from lands in which said plaintiffs neither had nor claimed to have any interest; the materials so used as aforesaid being of the value of at least eight thousand dollars. That said plaintiffs were frequently present while and when said Harrington was making and erecting said improve-

ments, well knowing that they were made by said Harrington under a claim of right to said land under and by virtue of the said purchase by him from said plaintiffs as aforesaid, and that said plaintiffs made no objection thereto, but, on the contrary, at all times encouraged said Harrington to make said improvements, faithfully promising him that they would fully execute their said contract by the conveyance of said land to him, as soon as the patent was issued for the same as aforesaid; that said Harrington occupied, possessed, enjoyed, and improved, said land, from the time of the making of said purchase exclusively, up to the time of his death, on or about the twenty-second day of June, A. D. 1857. That during said time, though the same would not become due and payable until the issuance of the patent as aforesaid, the said Harrington did pay to said plaintiffs sundry and divers sums of money, amounting in all to over fifteen hundred dollars, as a part payment of the consideration for said land. That previous to his death, the said Harrington made and executed, in due form of law, his last will and testament, by which said will he devised all his estate, both real and personal, a part of which and the greater part of which was the above described land, to his wife, Emily A. Harrington, subject to the payment of his debts, and appointed said plaintiff, S. M. Moses, his executor, giving him power to dispose of said land for the benefit of his said wife. That after the death of said William D. Harrington, to wit, on the eighteenth day of July, 1857, the said plaintiff, S. M. Moses, still recognizing and acknowledging the validity of said contract, and of such sale as aforesaid, appeared before the Probate Court in and for the county of San Mateo, and proved up said will, and took out letters of executorship on said estate of said Harrington, and took upon himself the duties of executing the provisions thereof, and while so acting as executor, acknowledging and recognizing the said land as the property of said estate, he frequently and repeatedly proposed and endeavored to lease the same for the benefit of said estate, and the widow of said Harrington. That he afterwards resigned his trust as such executor, and this defendant was, on the sixteenth day of November, A. D. 1857, duly appointed by the Probate Court of said county of San Mateo, administrator, with the will annexed of said estate of Harrington, and then and there took upon himself the duties thereof.

"This defendant admits that after he so became the only legal administrator of the estate of said Harrington, deceased, and became duly qualified and authorized to act as such, he did take the peaceable, quiet, and uninterrupted possession of the above-described tract of land, part and parcel of the land named in said complaint, as he lawfully might as such administrator, but he denies that he ever held said land in any other right, or that he has or ever had possession of any other or greater part of the

said tract described in said complaint. This defendant further states that after he had so become the administrator of the estate of said Harrington, deceased, to wit, on the twenty-first day of December, A. D. 1857, and as soon as he had ascertained that the said plaintiffs had obtained a patent from the Government of the United States for said land, he tendered to the plaintiffs the full consideration promised or agreed by said Harrington to be paid for said land, to wit, the sum of $6,000, which was counted out and offered to plaintiffs in gold coin, and a deed demanded of them for said land, in compliance with their said contract with said Harrington, but that said plaintiffs then refused to either receive said money, or to convey said land, or to otherwise comply with their said contract, and with intent then to defraud this defendant as the administrator of the estate of said Harrington, and the widow of said deceased, and heirs of said estate, falsely represented that said contract for the purchase and sale of said land, had been rescinded by said Harrington in his lifetime; and said plaintiffs have ever since refused, and still do refuse to convey the said land, or otherwise execute said contract, but fraudulently claim to hold said land, together with the improvements so placed thereon by said Harrington in his lifetime and in good faith, and to retain the money so received of Harrington as payment upon said contract. This defendant further alleges, that the said sum of five dollars per acre was a full and fair consideration for said land at the time said contract of purchase and sale was made, and that the purchase was made in good faith by said Harrington; and the most lasting and valuable improvements made on said lands, under the most earnest promises by said plaintiffs that said lands would be conveyed as aforesaid, and that said plaintiffs always promised to comply with and discharge their part of said contract until after the death of said Harrington, and even after his deafh, they have acknowledged the full obligation thereof, but now they fraudulently refuse to perform the same. This defendant has offered, as aforesaid, and now still offers, to pay the full amount due to the plaintiffs for said land, and prays the Court, by its judgment or decree in this cause, to compel the said plaintiffs to convey the said land to this defendant, for the use of the estate of said Harrington, to be disposed of in compliance with the provisions of his said will, and to otherwise specifically perform said contract, and that if they fail to do so, this Court will do the same for them; and, also, that they be enjoined from proceeding further in their action at law against this defendant for the recovery of the possession of said land; or if, in the opinion of this Court, said plaintiffs can not be compelled to specifically perform said contract, then this defendant prays that this Court will give judgment in favor of this defendant as such administrator of said estate, for the sum of $15,000, so in good faith, and with the knowledge and assent of

said plaintiffs, and under such color of title, expended by said Harrington in improving said lands, together with the legal interest thereon; and this defendant asks for such other and further relief in the premises as may, to this Court, seem just and and agreeable to equity and good conscience."

The plaintiffs demurred to the whole of the said answer, except the general denial, on the following grounds:

1. That it did not state facts sufficient to constitute a ground of defence, in this, that it prayed a decree for a deed of the land in dispute, upon the showing only of a verbal contract for the purchase of said land; and that it asked payment in an action of ejectment, for the improvements put on said land, without showing any privity between the parties, or any valid contract.

2. That it did not state facts sufficient to constitute a defence in other respects.

The demurrer was sustained by the Court, and the defendant excepted. The cause was then tried upon the issue made by the general denial. On the trial, the defendant offered to prove the same facts set up in his answer. Upon the objection of the plaintiffs, the Court refused to receive the proof, and the defendant excepted to the ruling. The plaintiffs had judgment, and the defendant appealed.

*H. M. Vories* for Appellant.

I. The Court below erred in sustaining the demurrer to the second defence set up in the answer, because:

*First*—Under our statute, where the plaintiff in an action sues to recover the possession of lands by virtue of a legal title in himself, the defendant may plead, or show by way of defence, an equitable title or right in himself; and in such case the Court will decree the legal title to the defendant upon such terms as will be just under the circumstances. Crary *v.* Goodman, 2 Kirnan R., 266; Tibeau *v.* Tibeau, 19 Missouri R., 78; Stone *v.* Sprague, 20 Barb. R., 509.

*Second*—The contract for the sale of the land to Harrington, as set up in the answer, was such a contract (the same having been partly performed by the delivery of the possession of the land to Harrington, and the making of large and valuable improvements thereon, and the payment of part of the purchase-money,) as a Court of Equity will enforce, the same not being within the Statute of Frauds. In fact, to permit the plaintiffs to avoid the contract would be to enable them to perpetrate a palpable fraud on the rights of Harrington's representatives. Story's Eq. Jur., §§ 759–764, and authorities there cited; Caldwell *v.* Harrington, 9 Pet., 86; Newton *v.* Swazey, 8 N. H., 9; Annan *v.* Merritt, 13 Conn., 478; Casler *v.* Thompson, 3 Green Ch., 59; Massey *v.* Mc-

Ilwain, 2 Hill Ch., 421; Brock v. Cook, 3 Porter, 464; 4 Blackf., 94, 383; 2 Scam., 218; 3 Ham., 294; Reynolds v. Johnston, 13 Texas, 214; Farrar v. Patton, 20 Mo., 81; Dispain v. Carter, 21 Mo., 331; Lowry v. Tew, 3 Barb. Ch. R., 407.

*Third*—It is no infringement of the policy of the Statute of Frauds to decree a specific performance of a parol agreement where the contract is not denied, and the statute not insisted on as a bar, by answer. 15 Ark., 322; Story's Eq. Pleadings, § 761, et seq.

*Fourth*—Nor is it an infringement of the statute to specifically enforce an agreement, not in writing, where there are equities existing between the parties, growing out of matters independent of the agreement. The Court, in such cases, exercises a jurisdiction which is of universal application in Courts of Equity in order to prevent fraud. Hunt v. Turner, 9 Texas, 385; Story's Eq. Jur., §§ 15, 22.

II. The demurrer ought to have been overruled, and the answer sustained, even if a specific performance of the contract or agreement was refused, for the purpose of compensating the appellant for money advanced and expenses incurred in part performance of the agreement. Anthony v. Leftwick, 3 Rand., 238; Parkhurst v. Van Cortlandt, 1 Johns. Ch. R., 273; Phillips v. Thompson, 1 Johns. Ch. R., 132; Town v. Needham, 3 Paige, 551.

In this State, the Supreme Court, in the case of Calderwood v. Abell, 4 Cal. R., 90, seem to have laid down a rule in conflict with almost all other authority, both in the United States and England. And, in fact, it is respectfully submitted that it is in direct conflict with the legislative enactment of this State ; see tenth section of the Statute of Frauds. It is contended that the clear and unmistakable intent of the Legislature was to enact the Statute of Frauds with the construction which had almost universally been given to other similar statutes. And as the case referred to can not have become a rule of property in this State so as to injuriously affect the community by its reversal, the policy of settling the law in conformity to the well-settled rule in such cases, and the clear intention of the Legislature, can not therefore be questioned.

*W. T. Gough* for Respondents.

I. The contract set up in the answer is not sufficient to enable the Court to decree a specific performance. A parol contract for the purchase of land is void, and a Court of Equity has no power to enforce a specific performance. Abell v. Calderwood, 4 Cal. R., 90.

It is freely conceded that the above authority is in conflict with many of the authorities cited by the appellant—indeed, it is so conceded in the opinion of the Court in said case—but

Courts of Equity, heretofore, in their desire to relieve against fraud, have thrown open another door for the perpetration of fraud far more injurious—that is, in the facility it has given to oral proof of the purchase of lands, after years have elapsed since the supposed making thereof, and the transaction forgotten.   Story's Eq. Jur., 765, 766; Lindsey v. Lynch, 2 Sch. & Lef., 4–6; O'Reilly v. Thompson, 2 Cox R., 271–273; Forster v. Hale, 3 Ves., 712; Phillip v. Thompson, 1 Johns. Ch., 149; Parkhurst v. Van Cortlandt, 1 Johns. Ch., 284.

Part performance should not be evidence of a parol agreement, but of compensation.   Lord Avandale, in Forster v. Hale, 3 Ves., 712.

There is a material difference in the statute of 29 Car. II, ch. 3, which has generally been adopted in the United States, and upon which the cases cited by appellant are based, and the statute of this State.   The former declares that no action shall be brought on a verbal contract for the purchase of lands which is not to be performed within one year; and the latter declares that no estate or interest in lands shall be created, other than leases for one year, which is not in writing, signed by the party, etc.   That is to say, the one takes away the remedy and leaves the contract subsisting, while the other declares that no such contract shall be entered into.   The one excepts out of its operation all contracts which are by their terms to be performed within one year, and the other only leases for one year.   These are important differences.   In the former cases the Court, when decreeing a specific performance, had a contract recognized by the statute upon which to base its decree, but in our State the Court will have to go further, and vitalize a contract, in the face of the statute, which declares it to be absolutely void.   See 29 Car. II, ch. 3; Story's Eq. Jur., 752; 2 Black. Com., book 3, p. 158; and the Statute of Frauds of California.

It has long since been held, that a part payment of the purchase-money is not sufficient to take the case out of the statute, because in another part of the statute in reference to personal property, part payment is expressly excepted, and, being silent in respect to real estate, it meant it should not bind in the case of lands.   Clinan v. Cooke, 1 Sch. & Lef., 40; Story Eq. Jur., 760; Pengal v. Ross, 2 Eq. Abr., 46.

And since our statute expressly excepts leases for one year, and expressly negatives all other parol contracts, it is urged that the above doctrine applies with greater force here.   This doctrine, and the case of Abell v. Calderwood, have been fully sustained and affirmed by this Court in the case of Lee v. Evans, 8 Cal. R., 424.

The doctrine of *stare decisis* applies to this case.   Welch v. Sullivan, 8 Cal. R., 165.

II.   A void contract set out in the answer is demurrable.

Even admitting that parol contracts for the purchase of lands could not be avoided in other States except by a plea, in writing, of the Statute of Frauds, the rule must be different here, where such a contract appears on the face of the pleadings; there the statute recognized the contract, and simply declared it to be voidable; here it is a misnomer to call it a contract—it is absolutely void.

A Court of Equity in this State could not decree a specific performance, even if no demurrer or plea was put in bar of such contract.

But, admitting there is no difference between the statutes, then the Statutes of Frauds and Limitations are alike in their operations—that is, they take away the remedy.

Where a claim is bound by limitation on its face it is demurrable.   Sublette v. Tinney, 9 Cal., 423; Fellers v. Lee, 2 Barb., 488; Humbert v. Trinity Church, 7 Paige, 194; Van Hook v. Whitlock, Ib., 373.

III. There can not be, in this action at least, any compensation for money laid out and expended, and improvements made, except by way of offset to any damage the plaintiffs may have proved.    For it must be remembered that this action is an ejectment, to which there has been set up an equitable defence; and if the appellant's position is correct—i. e. that although the contract can not be specifically performed, yet the Court can decree payment for the value of the improvements, etc.,—then there would be a judgment at law in favor of plaintiffs and a decree in equity in favor of defendants—which is a nullity on its face.

Such relief can not be obtained in this action; the cases cited by the appellants were commenced in a Court of Equity by bill.

A defendant is not confined to his equitable defence to action at law—he may resort to a Court of Equity by bill.    Lorraine et al v. Long, 6 Cal. R., 452.

IV. The defendant is not permitted to prove the value of the improvements, etc., where no damages are proved by plaintiffs, and no judgment rendered therefor.    Ford v. Holton, 5 Cal. R., 319.

V. A judgment compelling a party to pay for the value of the improvements in an ejectment, except as an offset to damages, is illegal and void.    Green v. Biddle, 8 Wheaton, 1; Gaines v. Bedford, 1 Dana's Ky. R., 481; 1 Yerger, 360; 2 Kent, 385–390, notes; Billings v. Hall, 7 Cal. R., 1.

FIELD, J., delivered the opinion of the Court—TERRY, C. J., concurring.

Upon the admission by the demurrer of the contract and acts set forth in the answer, two questions arise : *first*, whether, under the Statute of Frauds of this State, Courts of Equity possess any

power to decree a specific performance of a verbal contract for the sale of land in case of part performance; and, *second*, if they possess the power, whether the acts detailed constitute such part performance as to justify its exercise.

The plaintiffs rely, in support of the demurrer, upon the opinion of this Court in Abell *v.* Calderwood, (4 Cal., 90.) From the statement of the reporter, it does not appear that there were any acts of part performance alleged in that case to take the verbal contract from the operation of the statute. The opinion, however, goes beyond the facts of the case, and denies in general language the authority of a Court of Equity to decree a specific performance of a verbal contract in any case. So far as the opinion passes out of the facts of the case, it can not be regarded as authority, and we do not feel any embarrassment in departing from its conclusions.

The jurisdiction of Courts of Equity to decree a specific execution of verbal contracts, in certain cases, was asserted very soon after the passage of the English statute of 29 Charles II. That statute was intended as a protection against the perpetration of fraud by the assertion of pretended agreements and attempts to support them by perjury; and Courts of Equity, in enforcing contracts not made in conformity with its provisions, acted not upon any assumed authority to dispense with the statute, but with a view to carry out its true spirit and policy. Thus, where a verbal contract was alleged in the bill, and admitted in the answer, without the defendants' insisting upon the statute, a specific performance was decreed, upon the obvious grounds that the admission of the contract took the case out of the mischiefs against which the statute was intended to guard; and the failure to insist upon the statute, was a waiver of its protection. (Fonb. Eq. I, ch. 3, § 8; Att. Gen. *v.* Day, 1 Ves., 221; Gunter *v.* Halsey. Ambler, 586; Newland on Conts., 201; Spurrier *v.* Fitzgerald, 6 Ves., 548; Story's Equity, § 755.) So, where a verbal contract had been so far performed, by one of the parties, relying upon the good faith of the other, that he could have no adequate remedy except by complete performance, Courts of Equity decreed its execution, upon the ground that the refusal to execute the same under such circumstances was a fraud, and that a statute, having for its object the prevention of fraud, could not be used as an instrument for its perpetration. (Fonb. Eq., chap 3, § 8; Foxcroft *v.* Lester, 2 Vern., 456; Newland on Cont., 181; Morphett *v.* Jones, 1 Swanst., 181; Story's Eq., § 759.)

The jurisdiction of Courts of Equity thus early asserted to enforce a specific execution of verbal contracts, notwithstanding the Statute of Frauds, has been uniformly maintained in England ever since, and is now too firmly established to admit of question. And in almost every State of the Union, which has adopted the general provisions of the English statute, the juris-

diction is unquestioned.  The statute of this State contains a legislative recognition of its existence, in cases of part performance, when, in the tenth section of the first chapter it provides that "nothing contained in this chapter shall be construed to abridge the powers of Courts to compel the specific performance of agreements in case of part performance of such agreements."

It is true that eminent Judges have, at different times, questioned the wisdom of allowing exceptions to the statute, and have declared their intention not to extend them beyond the established precedents; but none have gone so far as to deny the power of a Court of Equity to grant relief in a clear case where the refusal to complete the contract would operate as a fraud upon the purchaser.  The statute of this State is almost literally copied from the statute of New York, and in that State the equity powers of the Court are on few subjects more frequently exercised than in the enforcement of the specific execution of verbal contracts for the sale of land in cases of part performance.

What acts shall be deemed a part performance, is a matter upon which there has been much discussion, and some conflict of opinion.  The true rule, gathered from the adjudged cases is, that nothing can be regarded as a part performance, to take the case out of the operation of the statute, which does not place the party in a situation which is a fraud upon him, unless the contract be executed.  Taking possession, is held such act of part performance, as the party might be treated as a trespasser if he could not invoke the protection of the contract.  And if, upon the faith of the contract, the purchaser should proceed to make valuable improvements, the most palpable fraud would be perpetrated if the vendor were permitted to withdraw from its execution.  (Clinan v. Cooke, 1 Sch. & Lef., 41; Parkhurst v. Van Cortlandt, 1 Johns. Ch., 284; Lowry v. Tew, 3 Barb. Ch., 413; Story's Equity, 761.)*

In the present case, the contract is admitted.  There is no doubt in regard to its terms.  The purchaser received possession under the contract, made permanent improvements, of the value of fifteen thousand dollars, with the knowledge and encouragement of the vendors, and paid fifteen hundred dollars of the

---

\* *Note.*—"It seems formerly to have been thought that a deposit or security, or payment of the purchase-money, or of a part of it, or at least of a considerable part of it, was such a part performance as took the case out of the statute.  But that doctrine was open to much controversy, and is now finally overthrown."  (2 Story's Eq., § 760.)

"Whether a mere payment is a part performance, sufficient to sustain the application in equity, was more uncertain.  At first, the Court seemed to think that if but little money was paid, it was not a sufficient part performance; but if much, it was.  This distinction has not been made in modern times, and certainly would be of difficult application, if not in itself unreasonable.  And now it seems to be quite well settled that no mere payment of money will take the case out of the statute."  (2 Parsons on Contracts, 551.)

consideration of the purchase; and such was his confidence in the good faith of the vendors that by his will he made one of them his executor, who took out letters testamentary, and, as executor, treated the land sold as the property of the deceased, and endeavored to lease the same for the benefit of his estate. There would be a great defect in the administration of justice if, under these circumstances, the defendants could have no relief.

The defence arising from a verbal contract for the sale of land, accompanied with acts of part performance, taking the contract from the operation of the statute, is permissible, under our system of practice, to an action of ejectment for the recovery of the premises. The only effect of this mode of asserting the rights of the defendant, instead of by a bill in equity, is to require the Court to pass upon the questions raised by the answer in the first instance. If, upon hearing the evidence, the Court should determine there was ground for relief, it would enjoin the further prosecution of the action with its decree for a specific performance; and, on the other hand, if it should refuse the relief, it would call a jury to determine the issue upon the general denial. (Thayer *v.* White, 3 Cal., 228; Chary *v.* Goodman, 2 Kirnan, 266; Tibeau *v.* Tibeau, 19 Missouri, 78.)

The answer disclosed the fact that the contract was not in writing, but it also averred acts of part performance, which took the contract out of the operation of the statute; and it was not, therefore, demurrable. (Story's Equity Plead., § 764; Cozine *v.* Graham et al., 2 Paige, 177; Harris *v.* Knickerbocker, 5 Wend., 638.)

The judgment is reversed, and the cause remanded for further proceedings.

BURNETT, J.—I think that the decision of this Court in the case of Abell *v.* Calderwood, is an authority in point for the plaintiffs. The case was regarded by this Court as one of part performance. The payment of the entire purchase-money had been made by the plaintiff, and this has been regarded by many authorities as a part performance. (2 Parsons on Contracts, 552; Williard's E., 284.)

The plaintiff also relies upon the leading principle announced in the decision of this Court in the case of Lee *v.* Evans, (8 Cal. Rep., 424.) As there has been a renewed discussion of this question, especially in the late dissenting opinion of Judge Field, in the case of Johnson *v.* Sherman, it is proper to state some further reasons in support of the conclusion to which a patient and anxious consideration of the whole question has led us.

It will readily be seen that many of the instances put by my associate, in illustration of his view, have no application to the precise point in question. For example, the admission of parol evidence, on the part of innocent and injured *third* parties, to

contradict or vary the terms or legal effect of a written instrument, rests upon a very different ground. It is no violation of the statute, for the simple reason that the statute itself makes such instruments void as against third parties, and, of course, allows parol testimony to show the fraud. (§§ 1, 20.) It is no violation of the rule of the common law excluding parol testimony, because written instruments estop only parties and privies. "The rule under consideration is *applied only to suits between the parties* to the instrument, as they alone are to blame if the writing contains what was not intended, or omits that which it should have contained." (1 Greenl. Ev., § 279.) So, in the case of resulting and implied trusts, the statute expressly excepts them from its operation, and the person seeking to enforce them is no party to the instrument. (§ 7; 4 Kent, 305; 1 Greenl. Ev., § 266.)

The rule which permits a party to the instrument itself to show that it was obtained by force, fraud, accident, or mistake, also rests upon a different principle. The theory of this rule proceeds upon the ground that the instrument never had a legal existence. The proper delivery of an instrument is necessary to give it vitality, and is a part of its execution; and when that delivery is induced, under circumstances which do not leave the party *free to act advisedly,* there is no *proper* delivery. True, the party has signed and delivered the instrument; but in doing this, he has not done that which he would have done freely, with a full knowledge of the existing circumstances. He has been guilty of no force or fraud himself, and no negligence can be imputed to him. He has acted under duress, or unadvisedly, without fault on his part; and, therefore, the instrument is not regarded as his proper act, and the Courts will not enforce it as such.

But the case is very different when there is no force, fraud, accident, or mistake, in the *creation* of the instrument. Here, the parties know the law and the facts, just as they are, and they act freely and advisedly. There is no imposition, no surprise, no ignorance; and the instrument contains precisely that which the parties have deliberately agreed it should contain. Yet the party comes into Court, and asks the privilege of showing that his most solemn deed contains a *deliberately false* history of the transaction it assumes to relate *truly.* And while he insists upon showing that his own deliberate and voluntary statements are untrue, he has no excuse to plead but his own willful negligence in violating the law.

It is most cheerfully conceded, that my associate has stated the rule for which he contends, in language as clear and accurate as the nature of the case will permit. He says: "The rule which refuses the admission of parol evidence, to contradict or vary written instruments, is directed to the language employed by the parties. That language can not be qualified, but must be left to

11

speak for itself." Again : " The parol evidence is admitted, as I have already observed, not for the purpose of contradicting or varying the written instrument, but to show facts *dehors* the instrument, creating an equity superior to its terms."

But with all due deference for the opinion of my learned associate, I can not perceive any substantial distinction between contradicting or varying the terms of an instrument, and creating an equity superior to its terms.    In both cases, the ultimate effect is precisely the same.    The legal effect of the instrument, as drawn from a correct construction of its terms, is equally defeated in both.    The same end is attained, whether you call it contradicting the instrument, or *creating* an *equity superior* to its terms.    It is very true, that the object of the Court is to ascertain the true *intention* of the parties.    But the Court having no intuitive knowledge of this intention, must, of necessity, resort to evidence to ascertain it.    The language of the instrument is but the medium through which the parties have mutually agreed to convey their intention to the Court.    Therefore, the legal effect of the instrument is only the legitimate result of a true construction of its terms.    And if you contradict the terms of the instrument, you defeat its legal effect; and if you control or defeat its legal effect, you impair its terms; because you keep those terms from producing their legitimate result.    " Courts can not adopt a construction of any legal instrument which shall do violence to the *rules of language*, or to the rules of law."    (2 Parsons on Contracts, 7.)    A valid, existing agreement, is one that the Courts will enforce.    If it can not be enforced, it is no contract, because it does not attain the *only end* contemplated by its terms.    The performance of the contract is the end sought by the parties who make it.    (Robinson *v.* Magee, 9 Cal. Rep., 83.) If the Court tells the party who seeks to enforce his written contract that its terms can not be contradicted or varied by parol evidence, but that such testimony will be admitted to show an equity *dehors* the instrument, *superior* to its terms, and that this superior equity must defeat his deed, what consolation is this to him ?    This alleged superior equity rests upon parol testimony, and this testimony rests upon the doubtful credibility and the fallible memory of witnesses.    In vain has the party relied upon the written evidence mutually created by both.    True, he is told that the terms of the instrument will not be contradicted or varied; but still he can obtain no enforcement of the rights clearly shown by those terms to exist.    Of what greater protection is the deed in the one case than in the other ?    It is equally overcome by parol testimony in both.    In one, it is called a contradiction ; in the other, by another name, meaning the same thing.    The superiority of parol over the written evidence is admitted, and enforced alike in both cases.

The Constitution of Kentucky created the Court of Appeals,

defined its jurisdiction, designated the number of Judges, the tenure of their offices, and prescribed the mode of their appointment.   The Court was filled by Judges appointed in the manner pointed out by the Constitution; but their decisions did not meet the views of the Legislature.   It was conceded that the Legislature had no power to *abolish* the Court, and no power to remove the Judges.   But it was contended by many distinguished men that the Legislature had the power to *re-organize* the Court, and thus obtain other Judges, who would decide certain acts of that body to be constitutional.   The Judges could not be *removed* from an office created by the Constitution, but they could be *re-organized* out of office.

The contradiction between a deed absolute upon its face, and the parol testimony which goes to show it was only intended as a mortgage, would seem to be plain.   The language of the deed is clear, definite and certain.   Its terms are so plain that it can not, upon its face, be distinguished from any other absolute deed conceded to have been *intended as such.*   Its terms say the land was *sold,* but the parol testimony says the same *land,* at the same time, by the same transaction between the same parties, was not sold, but only *mortgaged.*   The deed places the legal title in the grantee; but the verbal agreement places it in the grantor.   Under the terms of the deed, the *grantee* is the owner, and entitled to the possession; while under the terms of the parol agreement, the case is precisely reversed, and it is the *grantor* who is the owner, and entitled to the possession.   And when we look to those cases in which the Courts have excluded the parol testimony, because it contradicted or varied the written instrument, we shall see that the contradiction was no greater than in the case of an absolute deed being shown to be a mortgage.   (Greenleaf's Ev., § 281.)

The ground that parol testimony should be admitted to vary the written instrument, because a violation of the verbal agreement would be a fraud, is well stated by Professor Parsons " to be somewhat inconclusive."   (2 Par. on Con., 553.)   A party can not be guilty of a fraud for insisting upon his contract; and the only question is, what is the contract?   The writing says one thing, and the parol testimony another.   Which is the better evidence, and which shall we believe ?   The Court can only know from the testimony what the contract is, and what are the rights of the parties under it.   Before you can reach the conclusion that the party will be guilty of a fraud, you must determine what was the contract.   And to do this, you must decide between two conflicting classes of testimony, and prefer one to the other.

And the question "resolves itself into this: that a Court of Equity will set aside the Statute of Frauds, when, if applied, it would work or protect a fraud."   (2 Par. on Con., 553.)   And if

we set it aside in one case, because one of the parties will not perform a secret parol condition left out of the instrument, it is difficult to see why it should not be done in other cases. If a fraud in one case, it is equally so in others. The cases may differ in degree, but not in principle. The difference in degree may well be addressed to the Legislature, but not to the Courts. And when parties deliberately rely upon the mere verbal promises of each other, and willingly disregard the means the law affords for their protection, why should they afterwards call upon the Courts? If one man chooses to trust to the honor of another, should he not abide the event? He had the right to trust, and he should be bound to suffer the consequences. The Courts have no right to assume a guardianship over men, free and competent to contract, unless the law confers this power.

But it seems to me that the different provisions of our statutes, when taken together, settle this question. The Code provides " that a mortgage of real property shall not be deemed a conveyance, whatever its terms, so as to enable the owner of the mortgage to recover possession of the real property without a foreclosure and sale." (§ 260.)

Under this provision, the question whether the instrument be a mortgage or not, must be determined by the terms of the instrument as construed by the Courts at the time the Code was adopted. If a mortgage, then the right of possession is in the mortgagor until foreclosure and sale. By positive statute, the whole question as to the effect of mortgages is settled. If, therefore, the terms of the instrument be contradicted, the contradiction is the consequence of the statute itself. The terms of the law enter into and form a part of the mortgage; and effect is given to the instrument as thus modified by the law.

It will be seen that our Statute of Frauds differs in one very important respect from the English statute, as well as from the statutes of our sister States. The tenth section of our act specially excepts from its operation parol agreements that have been partly performed, leaving the power in the Courts to enforce a specific performance of such agreements.

It must be conceded that the framers of our statute were well acquainted with the whole current of decisions upon the English statute, as re-enacted in the different States of the Union. They put into the act the different exceptions found in the English statute; and, in *addition* to these, the tenth section. Why, then, did they not put in the exception in regard to mortgages? If any such exception was intended, then was the proper time to make it. The framers of our statute deliberately added one express exception, not found in the former statute; and we must presume they intended to leave their work complete. The act is carefully and ably drawn, and must have been maturely considered; and the very fact that no exception was made as to

parol mortgages, shows that no such exception was intended. And if no such exception was in fact intended, it is difficult to see how the statute could have been framed to exclude such exception, in terms more plain, without resorting to useless tautology. The framers of the act first lay down the general rule in very explicit terms; and then, in terms equally explicit, specifically state certain exceptions to that rule. Their attention was called to the matter of exceptions, and they exercised their judgment upon that question; and, as a result of that examination and decision, they distinctly state certain specified exceptions. How, then, can we say they intended others not thus stated? What right have we to add exceptions that they chose to omit?

And there would seem to have been the best reasons for the exception in the one case and not in the other. In the case of part performance, the plaintiff does not ask to be allowed to contradict his own deliberate and solemn deed; and the proof of his contract is much more certain, from the fact that his performance of the contract is open and notorious, and "the evidence of the bargain does not lie merely upon the words, but upon the fact performed." (Fonb. Eq., 170.) There has been a performance on his part; and if the contract be held void, he would lose not only the purchase-money, (the full value of the land,) but also all his improvements, and be liable in damages as a trespasser. But, in case of an absolute deed being intended as a mortgage, the party executing the instrument is not only guilty of negligence, but of falsehood; and the only loss he can sustain, by a rejection of his parol testimony, is the difference between the sum he received and the value of the land. Besides, there having been no open and notorious part performance of the contract, the difficulty of proof and danger of perjury are much greater.

At the time our statute was passed, the State was in its infancy; and the rapid advance in the value of real estate was anticipated by the Legislature. It was foreseen that if parol testimony should be admitted to show that a deed, absolute upon its face, was intended as a mortgage, the greatest possible inducements would be held out for perjury. A party selling a lot in any of our cities, would, in a short period, find the value increased many fold; and if he could be permitted to show by a foreign element, *dehors* the instrument, that it was no sale, but a mere mortgage, he would be under the greatest temptation to do so. A fortune might be the result of a single successful effort. The Legislature had, therefore, the best reasons for requiring parties to state the exact truth when they assume to state anything. It was intended to settle these vexatious questions, in relation to which there had been so great a conflict of opinion among jurists. It was wise in the Legislature to cut off that fruitful

source of perjury and vexatious litigation. The Legislature intended, I think, that henceforth the Courts should not be placed in the anomalous predicament of violating a plain statute to prevent a fraud.

But I take this view of the present case : A contract being a voluntary agreement between competent parties, upon a good consideration, to do or not to do some particular thing, which may be lawfully done or omitted, it makes no difference whether the subject-matter of the contract be real or personal estate, the contract is still good, whether verbal or written; unless some positive law provide otherwise. There being nothing in the statute declaring void a verbal contract for the sale of lands, when there has been a part performance, such a contract must be held good.

The provision of the tenth section is an express recognition of the validity of such contracts. If that section still left the Courts without power to enforce them, then it was idle, because the exception did no good. The Legislature intended to accomplish something by that section; but if the Courts possessed as little power with, as without the exception, then it was useless labor to put it into the statute.

There is no inconsistency between the principle laid down and the decision made in the case of Lee *v.* Evans. (Williard's E., 282; 2 Par. on Con., 548; Story's E. Jur., §§ 755–'56–'57.) The question was one solely relating to *evidence.* A party can waive the production of the written evidence if he pleases, because it is a personal privilege. The defendant, in that case, chose to put the result upon the parol testimony, and did not avail himself of the statute in his pleadings. Under our Code, if a defendant submits to answer, he must answer fully, or the facts are admitted. The admissions of a party upon the record are solemn admissions. (Greenl. Ev., 27, 186.) They are always regarded as equivalent to admissions by deed.

For the reasons stated, I concur in the judgment of reversal.