B. S. BROOKS, Respondent, v. L. TICHNER et al., Appellants.*

No. 3899; December 29, 1863.

Mortgage—Foreclosure—Parties.—The Owner of the Legal Title is a necessary party to a suit for the foreclosure of a mortgage.

Mortgage.—The Mortgage is Simply a Lien, a Mere Incident to the debt it is intended to secure; and the interest of the mortgagor, under former systems an equitable interest denominated an equity of redemption, is under our system regarded as the legal title in every sense and for every purpose.

Mortgage.—The Object of a Foreclosure Suit, so far as concerns the land, is to subject that to sale for the satisfaction of the debt and to bar the parties, brought before the court, from all right to redeem it, except as allowed by statute, from the sale under the decree.

Mortgage.—Strict Foreclosure is not Known to Our Law, but under our system the court decrees that the mortgagor's interest in the land, held by him when executing the mortgage or acquired by him subsequently, be sold in satisfaction of the debt.

Mortgage Foreclosure.—The Only Object or Effect of the Statute relative to foreclosures of mortgage is to afford a protection to a subsequent purchaser for a valuable consideration and without notice.

Lis Pendens.—The Statute has not Declared the Effect of a notice of lis pendens, but merely says that "from the time of filing only shall the pendency of the action be constructive notice to a purchaser or encumbrancer of the property affected thereby."

Lis Pendens—Not Retroactive.—The notice of lis pendens is not made to reach back, by relation, from the time of its being filed, so that a person who acquired an interest in the property subjected

---

* A rehearing in this case was granted February 4, 1864, and a rehearing was again granted March 6, 1865. An order dismissing the cause was entered August 15, 1865, and a remittitur issued August 12, 1867.

to litigation before the suit was begun shall be affected by such
filing with notice of the suit.

**Mortgage Foreclosure—Unknown Owner.**—If a plaintiff in fore-
closure is mistaken as to or ignorant of the actual ownership of the
property when bringing his suit, his course is, upon learning who is
the true owner, to bring the latter before the court during the pro-
ceedings, or else after the proceedings have his interest subjected to
the decree.

**Deed—Unrecorded Conveyance by Mortgagor.**—There is no rule,
either by statute or in equity, whereby an unrecorded deed, made
by a mortgagor after executing the mortgage and before suit to fore-
close it is begun, shall be treated as made pendente lite.

**Execution—Sheriff's Certificate.**—No Title Passes by the Sher-
iff's Certificate; it requires the deed to vest title in a purchaser at
a sheriff's sale. The purpose of having the certificate filed is, that
the judgment debtor and the redemptioners shall have information
necessary for them to have in coming in to redeem.

**Mortgage.**—The Grantee of an Unrecorded Deed to the Mort-
gaged Property, made after the execution of the mortgage, is not,
after the mortgage has been foreclosed, estopped to claim such prop-
erty as against the purchaser at the foreclosure sale by his having
been aware of the proceedings while they were going on, and even
though he acted as attorney for the defendants in those proceedings,
the mortgagee and such purchaser not knowing of his interest.

APPEAL from Twelfth Judicial District, San Francisco
County.

B. S. Brooks in pro. per.; F. F. Pringle and H. J. Labatt
for appellants.

RHODES, J.—This is an action of ejectment. The plain-
tiff had judgment and the defendant appealed to the late
supreme court, who reversed the judgment and ordered judg-
ment on the findings for the defendants, and afterward this
court granted a rehearing. It will be necessary to repeat a
few of the facts found by the court below, to give a correct
understanding of our views of the law applicable to the case.

On the eighteenth day of September, 1852, Lowell and wife,
who resided upon and were in possession of a tract of which
the premises in controversy form a part, mortgaged the same
to Wingate, to secure the payment of fifteen hundred dollars
and the interest. Lowell and wife, in 1853, conveyed the
premises to Carter, who in the same year conveyed the un-

divided half to Lawrence, and that half by mesne conveyance vested in the plaintiff, the deed to him being dated May 30, 1855. Carter conveyed the remaining half to the plaintiff, by deed dated September 11, 1855. All the deeds except the two to the plaintiff were duly recorded, and those two were recorded. January 29, 1859.

In 1856 Wingate commenced an action to foreclose his mortgage against the mortgagors (Lowell and wife), the two immediate grantors of the plaintiff and the mortgagee of one of them; and on the seventh day of February, 1857, he filed in the recorder's office a notice of lis pendens, and a decree of foreclosure and sale was rendered against all of the defendants by default October 3, 1858. The premises were sold by the sheriff on the nineteenth day of November, 1858, and the certificate of sale was duly filed, and on the 28th of May, 1859, the sheriff executed a deed to the purchaser. The purchaser entered into possession of the premises after the purchase was made. The defendants claim through the sheriff's deed. The court found that the plaintiff at the time of the foreclosure suit was, and still is, an attorney and counselor at law, practicing in the courts of this state; that during the pendency of the foreclosure suit he, as the attorney for one of the defendants—Partridge, who was one of his grantors—applied to Wingate's attorney for an extension of time to answer; that at that time he told Wingate's attorney that he (Brooks) claimed an interest in said premises under various titles, by prior possession and under a Mexican grant, but did not inform him that he claimed any interest under Lowell or subject to the mortgage, but he intended to leave, and did leave, on the mind of Wingate's attorney the belief that he claimed by title adverse to that which was sought to be foreclosed; and the court also found that neither Wingate nor his attorney knew, during the pendency of the foreclosure suit, that Brooks claimed any interest in the premises which was subject to the mortgage.

Several questions have been ably argued by the respective counsel, and particularly the one arising upon the construction of the Van Ness ordinance, but we think it unnecessary to pass upon that or many of the points raised. If the proposition of the appellants can be maintained that the title that passed by means of the Van Ness ordinance and the con-

firmatory act of the legislature vested, not in those in possession at the date of the introduction of the ordinance, but in Lowell, as the first possessor, and that it vested in him in such a manner that it fed the several conveyances and mortgages from and under him, so that the several mortgagees and purchasers will be deemed to have held the same right, title and interest in the premises that they would have had if Lowell, at the time of the execution of his mortgage to Wingate, had held that title, it still will not materially affect or qualify the view that we shall take of the case. For, if the appellants' construction of the ordinance is correct, we must first determine the rights of the parties growing out of the proceedings in the foreclosure and the transactions connected therewith, because the several parties would bear the same relation to each other and to the premises, with that title annexed, as they would if their rights and interest depended solely upon the prior possession of Lowell.

There can be no doubt that the owner of the legal title is a necessary party to a suit for the foreclosure of a mortgage. No rule of equity is more generally recognized than this, and so well settled is it, both upon principle and authority, that cases are seldom cited in its support. The importance as well as the necessity of the rule becomes the more manifest when it is considered that under our laws the mortgage is simply a lien—a mere incident to the debt it is intended to secure—and that the interest held by the mortgagor, which under former systems was regarded as but an equitable interest, denominated the equity of redemption, is under our system regarded as the legal title in every sense and for every purpose. The object of the suit to foreclose the mortgage, so far as the land is concerned, is to subject the land to sale for the satisfaction of the debt, and to bar the parties brought before the court of all right of redemption of the land from the sale under the decree except that allowed by the statute. No such proceeding is known to our law as a strict foreclosure, in which a mere equity of the mortgagor is cut off because of his breach of the condition of the mortgage; but under our system the court decrees that the estate in the land held by the mortgagor at the time of the execution of the mortgage, or by him subsequently acquired, be sold in satisfaction of the debt. In order that the decree of

sale may be effectual to bind such estate, the person owning it must be made a party to the suit.

The findings clearly show, and no question is made of the fact, that at the commencement of the foreclosure suit the respondent was the owner of the legal title. Under the general rule we have stated, he was a necessary party to the action, and not having been made a party, he was not bound by the decree.

But it is said by the appellants that a lis pendens was filed, and that as the respondent had not then recorded his deeds and the mortgagee had no actual knowledge of their existence, the respondent was not a necessary party to the suit— that such a case is an exception to the general rule. This position depends for its support upon the nature and effect of the notice of lis pendens. The grantee was never required by the common law or the statute of this state to record his conveyance for the purpose of passing to himself the title of his grantor. The title passed upon the delivery of the deed, but the statute has imposed a certain penalty for the failure of the grantee to record his deed, and that penalty is that the unrecorded deed shall be void as against a subsequent purchaser in good faith and for a valuable consideration where his own conveyance shall be first duly recorded. No other penalty is annexed by the statute to the failure to record the deed, and the failure to record the deed does not leave in the hands of the grantor or in any person holding any right, title or interest in the land prior to that passing to the grantee by his deed any other or greater power over or right in the land than he would have if the deed was recorded. The only object or effect of the statute is to afford a protection to a subsequent purchaser for a valuable consideration and without notice.

The statute has not declared the effect of the notice of lis pendens. It merely says that "from the time of filing only shall the pendency of the action be constructive notice to a purchaser or encumbrancer of the property affected thereby." The effect of the notice must be ascertained by a resort to the rules of equity, subject to the limitation of the statute, as to the time when its operation shall begin. It is said by Story that "a purchase made of property actually in litigation pendente lite for a valuable consideration,

and without any express or implied notice in point of fact, affects the purchaser in the same manner as if he had such notice, and he will accordingly be bound by the judgment or decree of the suit'': 1 Story's Equity Jurisprudence, sec. 405. See, also, Willard's Equity Jurisprudence, 251; Bishop of Winchester v. Paine, 11 Ves. 194; Murray v. Ballou, 1 Johns. Ch. (N. Y.) 576; Cook v. Mancius, 5 Johns. Ch. (N. Y.) 95. . The notice is confined by the terms of the rule to a purchase subsequent to the institution of the suit: See Curtis v. Sutter, 15 Cal. 259–263; Gregory v. Haynes, 13 Cal. 591–594; Richardson v. White, 18 Cal. 102–107. It is nowhere said in the treatises upon equity, and it certainly is not declared by the statute, that the person who acquired an interest in the property which is the subject of litigation before the commencement of the action shall, if the plaintiff had neither actual nor constructive notice thereof, be deemed a subsequent purchaser and become subject to the consequences of the notice of the lis pendens. In other words, the notice is not made, by relation, to reach back of the time of its filing to a period anterior to the commencement of the suit. It follows, therefore, that the interest acquired in the premises by the respondent anterior to the commencement of the foreclosure suit was not changed or in any manner affected by the notice of lis pendens or the proceedings or decree in that action.

The respondent urges with great force the consideration that if the person holding the legal title, of which the mortgagee has no notice, actual or constructive, is a necessary party, and if in such case his title cannot be reached or devested until the mortgagee has notice of his title, then it is in the power of the mortgagor and his assigns, by successive unrecorded conveyances, to constantly baffle the mortgagee and prevent indefinitely a foreclosure. That liability may exist, and still as a remedy for the impending injury the respondents may not be entitled, as the law now stands, to a decree directly affecting the interest of a person not brought before the court. Previous to the statutes of registration of deeds the mortgagee was under the necessity of bringing in the holder of the equity of redemption as a defendant in the suit for a strict foreclosure, and the mortgagor in bringing his bill to redeem was required to make the holder of

the mortgage a defendant, otherwise the proceedings in either case would fail of effect. The plaintiff was obliged to make the proper parties defendants to the action, and if at the commencement of the action he was mistaken or ignorant as to the person then holding the title or equity that was to be passed upon by the court, he could, upon discovering the true owner, bring him before the court during the proceedings, or could subsequently subject his interest to the decree. The liability to the inconvenience and delays arising from the ignorance of the plaintiff, as to the person holding the legal or equitable title, existed under the former practice as fully as under the present, in case the purchaser from the mortgagor neglects to record his deed. There may be many reasons addressing themselves to the legislature, suggesting the propriety of enacting that an unrecorded deed made by the mortgagor prior to the commencement of proceedings to foreclose the mortgage shall, under certain circumstances, be treated as made pendente lite, but such is not now the rule of the statute or of equity, and we are without authority to make such a rule. In Goodenow v. Ewer, 16 Cal. 461, 76 Am. Dec. 540, and Boggs v. Fowler, 16 Cal. 559, 76 Am. Dec. 561, the rule is stated, without qualification or exception, that the holder of the legal title is a necessary party to the suit to foreclose the mortgage.

It is insisted that the sheriff duly filed in the recorder's office the certificate of sale under the decree of foreclosure before the respondent's deeds were recorded, and that thereby the purchaser became such purchaser as is mentioned in section 26 of the act concerning conveyances, and is therefore entitled to the protection afforded by that section. The certificate is not a conveyance; no title passes by it. The deed is requisite to complete the series of acts which, taken together, devest the title of the defendants to the foreclosure suit and vest it in the purchaser: Catlin v. Jackson, 8 Johns. (N. Y.) 520; Farmers' Bank v. Merchant, 13 How. Pr. (N. Y.) 10; Vaughn v. Ely, 4 Barb. (N. Y.) 159; Smith v. Colvin, 17 Barb. (N. Y.) 157; Jackson v. Chamberlain, 8 Wend. (N. Y.) 620; Jackson v. Young, 5 Cow. (N. Y.) 269, 15 Am. Dec. 473.

The statute has not declared what shall be the effect of filing the certificate of sale. The statute of New York is quite

similar to that of this state, and it is said in Jackson v. Young, 5 Cow. 269, 15 Am. Dec. 473, that the statute providing for the filing of the certificate of sale is merely directory. The design in requiring the certificate of sale to be filed doubtless was to give the judgment debtor and the redemptioners the necessary information to enable them to effect a redemption. It appears very clearly from the reasoning of the court in Jackson v. Chamberlain—in which it is held that a purchaser at a sheriff's sale, who recorded his deed before notice of an unrecorded deed executed before the judgment—that the title of the judgment debtor passes upon the sheriff's deed executed in pursuance of the sale.

The point that is most strenuously urged by the appellant in connection with the foreclosure proceedings is that the respondent, when he had notice of the suit to foreclose the mortgage, not only did not disclose his title to the mortgagee, but studiously concealed it and induced him to believe that he (the respondent) claimed under a title adverse to that under which the mortgagee claimed; that such acts and representations and suppression of the truth in regard to his title amounted to a fraud upon the mortgagee.

There can be little doubt as to what was the duty, morally, of a person occupying the position the respondent filled at that time; and it may be admitted, for the purposes of this case, that legally he was under obligation to disclose the true state of his title. The alleged fraud in failing to disclose his title and in concealing it and neglecting to record his deed, it may be admitted, was calculated to and did mislead and injure the mortgagee, by preventing him from procuring a decree of foreclosure that would have bound the respondent's title, and its result, it may also be admitted, was to injure the purchaser at the sale, there being nothing of record then that indicated that the appellant claimed any interest in the premises under the Lowell title. It may be further conceded that the evidence shows that the mortgagee and purchaser, in ignorance of the true state of facts, relied and acted upon the declarations and acts of the respondent, and that they would be injured if he was now permitted to deny that the truth was as he induced them to believe. The respondent would in that event be cut off from the power of retraction and estopped from proving the truth as to his title. Those

acts and declarations amount to an estoppel in pais against the respondent, and constitute what is denominated an equitable estoppel. They do not devest him, however, of the legal title, for that he held previous to the foreclosure suit, and after the decree and sale, and he could by his own act pass the legal title in only one mode, to wit, a conveyance; but those matters constituting the estoppel in pais subjected the equitable title to the foreclosure proceedings, and transferred it to the purchaser at the sale under the decree. A court of equity, upon a proper case being made, will take hold of those facts which create and pass the equitable title, and decree that the legal title shall accompany the equitable title. The court will order the respondent to do that which he ought to have done if the truth had been as he induced the mortgagee and purchaser to believe it to be. A court of law is incompetent to administer relief in such case. The action of ejectment is founded on the legal title to the possession, and not upon the equitable title, and if the defendant wishes to rely upon an equitable title for his defense, he must set it up in his answer. This question was frequently before the late supreme court, and the necessity of specially setting forth the equitable defense was fully recognized (Arguello v. Edinger, 10 Cal. 150; Lestrade v. Barth, 19 Cal. 660); and the doctrine of those cases has been affirmed by this court in Downer v. Smith, 24 Cal. 114, Blum v. Robertson, 24 Cal. 127, and the recent case of Clarke v. Huber [25 Cal. 594]; and we are fully satisfied with our opinions in those cases.

In Clarke v. Huber the defendant relied upon an estoppel in pais, and offered to prove that the plaintiff's grantor, while he owned the land in controversy, pointed out to the defendant the land as the land that he had sold to the defendant's grantor, he knowing that the defendant was about to purchase the land, and that the defendant immediately thereafter purchased and paid for the land. We said: "The decisions of this and the late supreme court require that in actions at common law all equitable defenses should be specially stated in the answer. If they are not so stated, they are waived for all the purposes of the action."

In this case the defense consists of a general denial, a special denial, and the allegation of title in the defendant's landlords, without any equitable defense. It therefore follows

that the facts relating to the equitable title arising upon the estoppel in pais, if proven as fully as we have supposed, for the sake of the argument, do not constitute a defense to this action, because they have not been specially pleaded.

We have not deemed it necessary to consider the question whether Brooks did appear for Partridge in the case, and if so, whether he was under any legal obligation to disclose his title or claim to the plaintiff in the foreclosure suit; nor whether the purchaser could take any advantage of the acts or declarations of Brooks, as the appellant's attorney denies that the purchaser had any knowledge thereof, nor whether sufficient facts have been proven or found to constitute such an estoppel in pais as against the respondent that would preclude him, if the estoppel had been specially pleaded, from proving the truth.

Judgment affirmed.

We concur: Shafter, J.; Currey, J.; Sanderson, C. J.

I dissent: Sawyer, J.