[L. A. No. 1308.    Department One.—January 21, 1905.]

## W. T. BILL, Respondent, v. HENRY FULLER, Appellant.

SALE OF ORANGE CROP—DELAY OF PURCHASER—REJECTION OF OVERRIPE ORANGES—RECOVERY OF PRICE.—Under a contract made in November for the sale of an orange crop, to be taken, with the exception of late ones, before April first of the next year, and paid for in cash on delivery, and delivered when wanted by the purchaser, the purchaser had no right arbitrarily to fix the time of delivery, without regard to the maturity of the oranges on the trees or the effect of delay upon them; and where, as the result of his delay, after notice that oranges were ripe and ready for delivery, and that delay would injure them, large quantities of oranges became overripe and were rejected by the purchaser as unmerchantable, the grower had the right to recover their price fixed by the contract.

ID.—CONSTRUCTION OF CONTRACT.—Such contract of sale must be construed with reference to the character of the property which was the subject of sale, the situation of the parties, and the natural results of time and of the operation of natural forces.

ID.—IMPLIED WARRANTY—FAULT OF PURCHASER—ESTOPPEL.—Any implied warranty of the merchantable character of the oranges sold was, if existent, only a warranty that the fruit would be merchantable on the trees, and that, when gathered in due season, it should be handled and delivered with proper care. If they were allowed by the purchaser to remain too long upon the trees, so as to become too ripe and unfit for market, it was the fault of the purchaser, and he should not be allowed to take advantage of that fault.

ID.—EVIDENCE—FALLEN FRUIT.—A question as to whether some of the fruit on the trees when the contract was made fell off was properly excluded, where the fruit-grower did not claim payment therefor, and none of the fallen fruit, which was dwarfed and immature, is shown to have been delivered to the purchaser as fruit sold under the contract.

ID.—IMPROPER CROSS-EXAMINATION—SOFTENING OF FRUIT BY RAIN AND WEATHER.—Where the plaintiff as a witness upon his examination

in chief had not been asked with respect to the condition of the fruit, a question asked on cross-examination as to whether or not some of the fruit had not been softened by rain followed by hot weather was properly disallowed.

ID.—CARE OF ORCHARD—ISSUE NOT INVOLVED.—Where no issue was involved in the case as to the care given to the orchard by the plaintiff, there was no error in refusing to allow the defendant to cross-examine the plaintiff upon that subject.

ID.—FRUIT DELIVERED AND PAID FOR — PREMATURE DELIVERY. — Where early fruit was delivered and paid for without objection, it was not error to ask if plaintiff had not broken the contract by a premature delivery.

ID.—SALE OF CROP ON TREES—PASSAGE OF TITLE—RISK OF BUYER.— Where the agreement in form imported a present sale of a crop of oranges on the trees of the plaintiff, and the thing sold was then in existence, and was identified and separated from other things, it seems that under section 1141 of the Civil Code the title passed at once, and that the oranges remained on the trees at the risk of the buyer.

APPEAL from an order of the Superior Court of San Bernardino County denying a new trial and from an order refusing to set aside the judgment, and enter judgment for appellant. Benjamin F. Bledsoe, Judge.

The facts are stated in the opinion of the court.

Frank C. Prescott, for Appellant.

C. E. Chapman, for Respondent.

SHAW, J.—This was an action to recover the balance of the purchase price alleged to be due for a crop of oranges sold and delivered by the plaintiff to the defendant. The defendant appeals from an order denying his motion for a new trial, and from an order denying his motion, made under section 663 of the Code of Civil Procedure, to set aside the judgment entered, and to enter another and different judgment upon the findings.

The plaintiff was an orange-grower in the county of San Bernardino, and the defendant was engaged in the business of buying, selling, packing, and shipping fruit. Fuller inspected the plaintiff's orchards and immediately afterwards they made the following agreement: "This agreement, made this 19th day of November, 1900, by and between W. T. Bill

and Henry Fuller, witnesseth: That said Henry Fuller has this day bought all the oranges grown this year by W. T. Bill in West Redlands and Bryn Mawr, except the St. Michaels, at two cents per pound (except the Australian navels on the five acres known as the Mabry Ranch, for which said Fuller agrees to pay one cent per pound), and said W. T. Bill hereby sells to H. Fuller at said prices. All oranges to be taken by H. Fuller on or before April 1st, 1901, except the late Valencias, and paid for in cash as soon and at the time of delivery. And W. T. Bill agrees to deliver at Bryn Mawr Station when wanted by H. Fuller.'' The court found that in pursuance of this agreement plaintiff delivered 160,256 pounds of oranges at two cents per pound, and 5,197 pounds at one cent per pound; that the defendant rejected 60,888 pounds of the two-cent oranges, and 2,492 pounds of the one-cent oranges, and refused to pay for those so rejected; that at the contract price the rejected oranges would amount to $1,243.26, and for this amount judgment was given in favor of the plaintiff. The principal contention arises upon the construction of the contract.

The defendant claims that there was an implied warranty of the merchantable quality of the fruit at the time of delivery, and that under the last clause of the agreement he had the right arbitrarily to fix the time of delivery without regard to the condition of the oranges or the effect of delay upon them. In this we think the defendant was mistaken. At the time the contract was made the oranges were practically full grown, but not yet ripe enough for the market. The testimony shows, and the court found, that the oranges became ripe and ready for market in January of the year 1901; that the plaintiff at various times from that time forward until the 12th of March informed the defendant that they were ripe and ready for picking and shipment, and that delay would injure them, but the defendant each time refused to receive them until March 12th, and that at that time he told the plaintiff to deliver the oranges as fast as he could, but that he would cull out all the unmerchantable fruit. The plaintiff objected to the culling, but said he would deliver them and demand that they all be received as fruit properly delivered under the contract. A contract of sale must be construed with reference to the character of the property which is the sub-

ject of the sale, the situation of the parties, and the natural
results of time and of the operation of natural forces. The
court found that in January the fruit delivered was all mer-
chantable, and that at the time of its delivery in the latter part
of March it was in as good condition as it could be kept by
reasonable care, and that the unmerchantable condition of
the fruit at the time of its delivery was caused solely and only
by reason of the fruit being left on the trees an unreasonable
length of time. Under these circumstances we think the con-
tract should not be construed to give Fuller the absolute right
to defer the delivery of the oranges to the injury of the plain-
tiff. It must be construed to mean that the oranges were to
be taken by Fuller on or before April 1, 1901, and at such
reasonable time as should be necessary to insure their good
condition with respect to maturity and fitness for market.
It cannot be that under this agreement the defendant was at
liberty to refuse to accept the oranges, and compel the plain-
tiff to keep them on the trees until one half of them had be-
come unfit for market. The merchantability which was war-
ranted by the contract, if there was any such warranty, was
nothing more than a warranty that the fruit should be mer-
chantable on the tree, and that when gathered in due season
it should be handled and delivered with proper care. This
being the case, under the findings we think the defendant was
not justified in refusing to accept the oranges which he culled
from the crop because of his claim that they were too ripe and
puffy for the market. The fact that they had been allowed to
remain so long on the trees, and thus become unfit for the
market, was the fault of the defendant, and he should not be
allowed to take advantage of that fault.

There are some minor objections which may be noticed.
There was no error in sustaining the objection to the question
whether or not there was fruit on the trees at the time of
making the contract which fell off and never was incorporated
into the contract at all. The plaintiff did not claim payment
for any such fruit, and there is no evidence that he ever de-
livered any of it to the defendant. His statement that there
was some dwarfed, immature fruit that dropped off the trees
and decayed on the ground, and that he endeavored to pick
up the most of it, is misunderstood or misinterpreted by the
appellant. It is clear that he did not intend by that state-

ment to say that he had picked up this immature fruit and delivered it as fruit sold under the contract. It was not error to sustain the objection to the question asked the plaintiff while he was testifying as a witness whether or not some of the crop had been softened by reason of a rain followed by hot weather. This was not cross-examination. The plaintiff had not been asked upon his examination in chief with respect to the condition of the fruit. Nor was there error in refusing to allow the defendant to cross-examine the plaintiff with respect to the care which he gave to the orchard. There was no issue involving that proposition.

The court did not err in sustaining the objection to the question put to plaintiff whether he had himself broken the contract by delivering a small quantity of fruit in January which had been paid for. There was no controversy over this fruit, nor over any fruit except that delivered in March. The testimony was, that all the fruit except the March deliveries was paid for without question, and whether the plaintiff had prematurely delivered the small quantity of oranges in January was immaterial, inasmuch as the defendant accepted the same without objection. The defendant claims that some of the findings are not supported by the evidence. We do not think it necessary to discuss this question in detail. An examination of the evidence shows that the findings are all fairly supported.

We have treated the case upon the theory that the title did not pass until delivery and that the findings were all included within the issues made by the pleadings, although plaintiff contends with much force that all the findings other than the findings that the allegations of the complaint are true, and that the allegations of paragraph No. 3 of the answer are untrue, are outside the pleadings, and, although in favor of the plaintiff, are unnecessary to a decision of the case. The evidence upon which they are based was introduced over the plaintiff's objection, and consequently he could not be held to have allowed the case to be tried upon the theory that these findings were within the issues. But treating the findings as within the issues, we are of the opinion that no error was committed by the court.

Nor do we wish to be understood as holding that the title to the crop did not pass as soon as the contract was executed.

The agreement in form imports a present sale, the thing sold was in existence and was identified and separated from other things. Under section 1141 of the Civil Code, it would seem that title passed at once, and that the oranges remained on the trees at the risk of the buyer.

The orders are affirmed.

Van Dyke, J., and Angellotti, J., concurred.