[Civ. No. 2958. Second Appellate District, Division One.—May 27, 1920.]

## S. T. MILLER, Respondent, v. HUNT, HATCH & COMPANY, Appellant.

[1] CONTRACTS—SALE OF CROP OF ORANGES—DESTRUCTION BY FROST— LIABILITY OF BUYER.—Where a contract for the sale of a crop of oranges then growing in a certain orchard states that the owner "has this day sold" the same, and provides that the buyer is to furnish all boxes to put the said fruit in and to pick the fruit free of all costs to the owner, the fruit to be of merchantable quality and picked at the option of the buyer, provided the same is removed on or before a specified date, the buyer is obligated to take the fruit which is mature and ready for the market on or before that date, and at such reasonable time as should be necessary to insure their good condition, and where the buyer does not do so, and the fruit is destroyed by frost, the buyer is liable to the owner for the purchase price thereof.

[2] ID.—ACTION TO RECOVER UNPAID BALANCE—CONDITION OF FRUIT— EVIDENCE—FINDINGS—APPEAL.—In this action to recover an unpaid balance alleged to be due on the sale by plaintiff to defendant of a crop of oranges, a part of which had been destroyed by frost, the evidence was sufficient to support the findings of the trial court that the portion of the fruit which was marketable on

a specified date was easily and readily separable from that which had been frozen, and that the fruit for which compensation was allowed was merchantable during a certain specified period; and, though there was testimony to the contrary, such findings were conclusive on the appellate court.

APPEAL from a judgment of the Superior Court of Tulare County. J. A. Allen, Judge. Affirmed.

The facts are stated in the opinion of the court.

Farnsworth, McClure & Burke for Appellant.

Charles W. Braswell and Middlecoff, Scott & Ham for Respondent.

CONREY, P. J.—Action to recover an unpaid balance alleged to be due on the sale by plaintiff to the defendant of a crop of oranges. Judgment in favor of the plaintiff, from which the defendant appeals.

[1] In a written agreement, of date April 20, 1916, it was stated that the plaintiff "has this day sold" to the defendant his entire crop of oranges, now on the trees growing on his ranch at Lindsay, California, at a stated price per hundredweight. "All fruit is to be weighed at the Hunt, Hatch & Company's packing house and paid for upon the delivery of duplicate weight receipts at their office at the said packing house at Lindsay. Hunt, Hatch & Company are to furnish all boxes to put the said fruit in and agree to pick and haul the said fruit free of all costs to the said S. T. Miller. Fruit is to be of merchantable quality and picked at the option of the said Hunt, Hatch & Company, provided same is removed on or before December 25, 1916." The court found that on the thirteenth day of December, 1916, there remained in plaintiff's orchard 380 trees which were unpicked; the amount of unpicked oranges thereon being 85,000 pounds. Finding V reads as follows: "That on November 16, 1916, some of said oranges were injured by frost but at least 80 per cent of said oranges were from November 16, 1916, to December 13, 1916, uninjured and were ripe, in good condition, ready for harvest, and merchantable; that between said November 16, 1916, and December 13, 1916, defendant had sufficient time to pick and

47 Cal. App.—49

haul said ripe and merchantable oranges and could and should have done so; but defendant failed and neglected to pick or haul or pay plaintiff for said merchantable portion of said fruit within said time or at all; that said merchantable oranges were readily and easily separable from the injured oranges; that on the night of December 13, 1916, said merchantable oranges were injured by frost and later about January 6, 1917, were totally destroyed by frost and the amount of merchantable fruit which the defendant so left on said trees unpicked and unharvested in a ripened and merchantable condition and quality which defendant should and could have picked in such merchantable condition was 68,400 pounds.'' Finding VII is as follows: ''That from Nov. 16 to the 13th day of December, 1916, all of said 68,400 pounds of fruit above mentioned came up to the test of an ordinance of the Board of Supervisors of the County of Tulare, mentioned in the Answer of defendant, and none of said 68,400 pounds had been frozen prior to December 13, 1916, to such an extent as to render the same wholly unfit or unfit at all for consumption or merchantable.''

Appellant contends that there was only an agreement for sale and not an actual sale of the crop; and that under the contract the purchaser had the right, at his own option, to defer the time of picking the fruit until the twenty-fifth day of December, 1916, provided only that it was all picked not later than that date. The effect of this contention, if allowed as appellant insists upon it, would be that, even if the fruit was mature and ready for the market on and after November 16th, the loss caused by its destruction by frost at any time prior to December 25th would have to be suffered by the plaintiff. With this contention and its claimed effect we do not agree. In *Bill* v. *Fuller,* 146 Cal. 50, [79 Pac. 592], the contract was for the sale of a crop of oranges not yet matured, and it was provided therein that the vendee ''has this day bought'' a described crop of oranges. It was provided that all of the oranges were to be taken by the purchaser on or before a stated date, and the vendor was to deliver at a certain station when wanted by the purchaser. Of this contract the supreme court said: ''Nor do we wish to be understood as holding that the title to the crop did not pass as soon as the contract was executed. The

agreement in form imports a present sale, the thing sold was in existence and was identified and separate from other things." The contract in that case limited the time of delivery in a similar manner as in the case at bar; the language used being, "all oranges to be taken by H. Fuller on or before April 1, 1901." The court found that the oranges became ripe and ready for market in January, 1901, but the defendant refused to receive them until March, at which time, without fault of the vendor, some of the fruit had become unmerchantable by becoming too ripe and puffy for the market. Under these circumstances it was held by the supreme court that the contract should not be construed to give Fuller the absolute right to defer the delivery of the oranges to the injury of the plaintiff; that it must be construed to mean that the oranges were to be taken by Fuller on or before April 1, 1901, and at such reasonable time as should be necessary to insure their good condition with respect to maturity and fitness for the market. "The merchantability which was warranted by the contract, if there was any such warranty, was nothing more than a warranty that the fruit should be merchantable on the tree, and that when gathered in due season it should be handled and delivered with proper care. This being the case, under the findings we think the defendant was not justified in refusing to accept the oranges which he culled from the crop because of his claim that they were too ripe and puffy for the market." So here, assuming the facts to be as found by the court, the appellant was obligated to take the oranges on or before the twenty-fifth day of December, 1916, and at such reasonable time as should be necessary to insure their good condition.

[2] Appellant contends that the evidence is not sufficient to support the finding that the portion of the fruit which was marketable on November 16th was easily and readily separable from that which had been frozen; and that the evidence is not sufficient to support the finding that the fruit for which compensation has been allowed was merchantable from November 16th to December 13, 1916. From the testimony of defendant's manager, Mr. Sparks, it appears that in November or December, 1916, the defendant procured for use in its packing-house a machine called a separator, which was used for the purpose of separating

frozen fruit from the better fruit. This machine was first put in operation by the defendant on the thirteenth day of December. It does not clearly appear from his testimony that the oranges which were run through the separator at that time were from the Miller orchard, nor was the time stated at which such fruit had been picked. He states that the result of the operation was that the fruit was so badly frozen that it was hard to separate the best from the worst of it; it was so badly frozen that they could not separate the fruit properly. Mr. Sparks states that the first frost occurred on November 16th, and the second, which was the disastrous frost, occurred on December 13th. There is no evidence that fruit picked from the Miller orchard prior to December 13th could not have been successfully graded by means of this separator so as to pick out the frosted fruit from that which was not frosted. Frank Brann, horticultural commissioner, a county officer, who, in co-operation with an officer of the United States government, appears to have made examinations of the fruit in this packing-house and exercised some authority over shipments, testified that all of the fruit from the Miller orchard that came into the defendant's packing-house (although some of it was held up temporarily) was passed and certified as marketable before the first day of January. There was introduced in evidence an ordinance of the county of Tulare which prescribes a test of maturity of oranges, which is commonly known as the 8-to-1 test and refers to the quantity of soluble solids in the orange as compared with the quantity of acid contained in the juice. The plaintiff testified that, on December 10th or 12th, he took from the orchard samples for testing, and had them tested by S. Kohner, a tester employed in the packing-house of the Randolph-Martin Fruit Company. Mr. Kohner testified that the tests which he made of these samples were, on December 14th, 8.2-to-1, and on December 21st, 7.5-to-1. Mr. Sparks testified that the defendant caused some tests to be made by one E. G. Rooke about November 20th. The actual results of those tests were not given in evidence. Sparks says that they were "not satisfactory." Referring again to the same matter, he said: "There was a difference in the fruit; some of the fruit on the outer side of the orchard gave a different test from trees inside the orchard." In another place Mr. Sparks testified that none of it tested

8–to–1. It is to be observed here that there was a sharp contradiction between the testimony of plaintiff and the testimony of Sparks concerning certain conversations between them. It may be that the court, as was its right, placed the greater confidence in the testimony of the plaintiff as to those conversations, and for that reason discounted the testimony of Sparks on the subject of the 8–to–1 test and the other conditions of the fruit. The plaintiff testified that the fruit was, on the 20th of November, of fair size and color, and in good condition; that beginning on November 20th the defendant picked the fruit from the northern part of the grove, and all of that fruit was paid for; that the fruit was merchantable from November 20th to January 6th; that Mr. Sparks did not tell him at any time prior to December 25th that the fruit was frozen; that after December 25th, at a time when defendant had stopped picking from this orchard, plaintiff asked Mr. Sparks when he expected to finish packing the fruit, and Sparks replied that he would pick it as fast as he could get to it—as fast as he could handle it he would take it; that the plaintiff used fruit daily from this orchard at his house from the time they commenced picking on November 20th until after January 1st, and it was in good condition. Answering the question, "Was it frozen?" he replied: "Not that I could tell." Plaintiff further testified that the fruit on the south portion of the orchard which was not picked was as good as that on the northern portion which was picked by the defendant; that it was practically the same.

From the foregoing summary of a part of the evidence our conclusion is that the evidence is sufficient to support the findings of fact to which we have referred and which are challenged by appellant. There is on several of these points evidence to the contrary of that which has been stated, but this is no more than sufficient to produce a conflict in the evidence. On such state of the record, under the well-established rule, the findings must be sustained.

The judgment is affirmed.

Shaw, J., and James, J., concurred.