[Civ. No. 2214.    Third Appellate District.—October 9, 1920.]

ADAM KELLER, Respondent, v. JOHN GERBER, as Executor, etc., Appellant.

[1] ESTATES OF DECEASED PERSONS—FILING OF CLAIM WITH DEPUTY COUNTY CLERK — WHEN COURTROOM DEEMED PART OF COUNTY CLERK'S OFFICE.—Every courtroom of a department of the superior court in which a deputy county clerk is assigned under the law is as much a part of the county clerk's office as if the partitions were removed and it was in fact a part of one room; and the handing of a claim against an estate to the deputy county clerk in the courtroom of the department of the superior court in which such estate is pending, with the request that he file the same, constitutes a filing of the claim "in the office of the clerk of the court-

room from which the letters were issued," as required by section 1490 of the Code of Civil Procedure.

[2] ID.—TAKING OF CLAIM FROM DEPUTY COUNTY CLERK FOR PRESENTATION TO JUDGE—PRESENTATION FOR FILING NOT DESTROYED.—Where claims against an estate are handed to the deputy county clerk in the courtroom of the department of the superior court in which such estate is pending, with the request that he file the same, and he retains them in his possession until the attorney for the claimant takes them and presents them to the judge, the act of such attorney in thus taking the claims for presentation to the judge after their delivery to the deputy county clerk for filing does not constitute such a withdrawal of the claims as to destroy the effect of such previous presentation for filing.

[3] ID.—ORAL CONTRACT FOR PERSONAL SERVICES—FULL PERFORMANCE —STATUTE OF FRAUDS.—Where there has been a full performance of an oral contract to render personal services, the person rendering such services is entitled to recover therefor, notwithstanding such contract was invalid under the statute of frauds.

[4] ID.—ACKNOWLEDGMENT OF INDEBTEDNESS—PROMISE TO PAY REASONABLE VALUE OF SERVICES RENDERED—SUFFICIENCY OF MEMORANDUM.—A written memorandum, signed by the deceased about two weeks before his death, providing, among other things, as follows: "And besides I will pay to Mr. Adam Keller extra for his services for nursing during the time of my sickness," constitutes a valid and sufficient written contract to pay the reasonable value of the services thus rendered by the person named, and is a sufficient acknowledgment of the indebtedness to take the claim against the estate of the deceased for such services out of the bar of the statute of frauds.

[5] ID.—ACTION ON REJECTED CLAIM FOR NURSING—CHARACTER AND VALUE OF SERVICES—ADMISSIBILITY OF TESTIMONY OF ATTENDING PHYSICIANS.—In an action on a rejected claim against an estate for the reasonable value of services rendered the deceased, the testimony of physicians who attended the deceased as to the general character and value of the services rendered by the plaintiff as nurse is not rendered inadmissible by the provision of subdivision 4 of section 1881 of the code, which precludes a physician, without the consent of the patient, from being examined as a witness "as to information acquired in attending the patient, which was necessary to enable him to prescribe or act for the patient."

APPEAL from a judgment of the Superior Court of Sacramento County. Charles O. Busick, Judge. Affirmed.

The facts are stated in the opinion of the court.

C. W. Baker and R. Platnauer for Appellant.

White, Miller, Needham & Harber, C. E. McLaughlin and C. P. McLaughlin, for Respondent.

NICOL, P. J., *pro tem.*—The plaintiff and defendant are executors of the last will and testament of Conrad Iser, deceased. The said Conrad Iser died on the nineteenth day of January, 1917. His will was admitted to probate and letters testamentary issued to the said Adam Keller and John Gerber on February 6, 1917. The estate exceeds in value the sum of $10,000, and the first publication of notice to creditors was made on February 7, 1917. Two claims against the estate, the latest of which was to all intents and purposes an amendment of the first, were presented by plaintiff, and neither was allowed nor rejected within the time allowed by law. A short time after the period prescribed for allowance or rejection of claims had expired this action was commenced. The claims were for ''work, labor and services rendered by claimant in caring for and nursing Conrad Iser continuously during the whole period of time commencing October 20, 1913, and ending January 19, 1917, the date of the death of Conrad Iser, a period of 169 weeks,'' and other services rendered in caring for the business of deceased. The court did not allow anything for services rendered in caring for the business of the deceased, but rendered judgment in favor of plaintiff for the sum of $5,070 for services rendered by plaintiff in caring for and nursing deceased for the period above stated.

[1] It is claimed by the appellant that the claims were not presented or filed within the time prescribed by law. The essence of the argument on this contention is that a claim filed with a deputy county clerk in the courtroom of a department of the superior court is not filed with the county clerk. In other words, it is claimed that no claim is filed with the county clerk until it is presented in the main office of the county clerk.

It appears from the evidence that on September 29, 1917, Clinton L. Harber, one of the attorneys for plaintiff, handed to the deputy county clerk at his desk in the courtroom of Department No. 3, of the superior court of Sacramento County, the first claim, and requested him to file

the same, at which time he requested the deputy clerk when he handed the claim to the judge to ask the judge not to take any action on it until after he had an opportunity of talking with the judge. That he handed the amended claim to the said deputy county clerk at his desk in said court-room on November 14, 1917, and requested him to file it, and also told him that when he presented it to the judge to call the judge's attention to the fact that he did not want him to take any action on it without first giving claimant an opportunity to be heard.

The presenting of these claims to the deputy county clerk in the manner as above stated was a filing of the claims. Section 1490 of the Code of Civil Procedure provides that claims must be filed "in the office of the clerk of the court from which the letters were issued." In our opinion each department of the superior court is necessarily a court, and the clerk of each department is the clerk of that court. There is nothing in sections 4178 and 4312 of the Political Code that militates against this conclusion. These sections defining the duties of the county clerk require that he have an office at the county seat and that in such office during the hours from 9 o'clock A. M. until 5 o'clock P. M. of each day in the year, except Sundays and holidays, there shall be present at least one person qualified and prepared to transact the business that may properly come into said office. But neither of said sections supports the contention of appellant that the main, central office, where the permanent records are kept, is the sole and exclusive office of the county clerk. In our opinion every courtroom in which a deputy county clerk is assigned under the law is as much a part of the county clerk's office as if the partitions were removed and it was in fact a part of one room.

The appellant cites the following California cases: *Estate of Sbarboro*, 63 Cal. 5; *Tregambo* v. *Comanche*, 57 Cal. 501; *Edwards* v. *Grand*, 121 Cal. 254, [53 Pac. 796]; *Hoyt* v. *Stark*, 134 Cal. 178, [86 Am. St. Rep. 246, 66 Pac. 223]; *Rauer etc. Co.* v. *Standley*, 3 Cal. App. 44, [84 Pac. 214]; but none of these cases, in our opinion, supports the appellant in this contention.

In *Estate of Sbarboro*, 63 Cal. 5, the petition for revocation of probate of will was delivered to the clerk of the court for filing about 9 o'clock A. M. on the third day of

December, 1879; but the decree of the court admitting the will to probate had been entered on the second day of December, 1878, and the year within which the probate could be contested had run at midnight on December 2, 1879. The petition before it was filed or presented to the clerk for filing had been presented to the judge of the court at his private residence on December 2, 1879, for an order for the issuance of a citation upon it, and for the purpose of examining it, so as to determine whether the petitioners were entitled to the order; the judge retained the petition in his possession until the morning of the third day of December, 1879, when he took it to the office of the clerk of the court, and about 9 o'clock A. M. on that day delivered it with his order for the issuance of a citation thereon. It was held that presenting the petition to the judge was not filing it in court, nor the equivalent of filing it. That it must be filed with the clerk, and if not so filed prior to the expiration of the year, the decree becomes conclusive and absolute.

In *Tregambo* v. *Comanche*, 57 Cal. 501, the attorneys for the defendant on the twentieth day of April, 1879, forwarded to the clerk of the court, to be filed, certain demurrers to the complaint. The demurrers were regularly delivered to the clerk of the court on the twenty-ninth day of April, 1879. He received them without demanding his fees for filing them. But on May 1, 1879, defendant's attorneys received a letter from the clerk demanding his fees for filing the demurrers; they left Bodie for the county seat on May 2d and arrived there the same day, whereupon they tendered to the clerk his fees, which he refused to receive, because he was then in the act of entering the defendant's default for not answering. Upon these facts the supreme court held that the demurrers were on file in contemplation of law and that the default should have been set aside.

In *Edwards* v. *Grand,* 121 Cal. 254, [53 Pac. 796], the defendant Gerard Grand executed a mortgage to the plaintiff on November 22, 1892, and on the same day his wife made a declaration of homestead upon a portion of the mortgaged premises. The foreclosure of the mortgage was resisted by the wife upon the ground that, to the extent that the mortgaged premises are covered by the declaration of

homestead, the mortgage was invalid, for the reason that she did not unite in its execution. The mortgage was taken to the office of the county recorder for record a few minutes after 5 o'clock P. M. on the day it was executed, and, as the statute only required the office to be kept open until 5 o'clock, the mortgage was delivered to the recorder with the request that he would record it the first thing on opening his office the next morning. On the next morning, a little before 9 o'clock, while the recorder was on his way to the office, the declaration of homestead was handed to him, with the request that he would record it the first thing after the office was open, and when he reached his office, finding that the two instruments affected the same premises, he indorsed each of them as follows: "Filed for record November 23, 1892, at 9 o'clock A. M." The court said: "An instrument is filed for record when it is deposited in the proper office, with a person in charge thereof, with directions to record it. . . . Delivering an instrument to the proper officer, at a place other than the office where it is required to be filed, is not sufficient, even though the officer indorses it as properly filed." And it was held that the mortgage, which was presented at the recorder's office after 5 o'clock P. M., took precedence as to time of recordation over that of the declaration of homestead which was delivered to the recorder upon the street the following morning.

In *Hoyt* v. *Stark*, 134 Cal. 178, [86 Am. St. Rep. 246, 66 Pac. 223], the attorney for appellant on the last day allowed by law to file an undertaking on appeal, went to the office of the county clerk after 5 o'clock P. M. Finding the office closed, he went to a social club in the city of San Jose, where he found one of the deputy county clerks. To him he explained the circumstances. The deputy took the undertaking and indorsed it as filed upon that day and date. At 9:30 A. M. upon the following day, respondent's attorney called at the clerk's office and found no record of the filing of the undertaking. Thereafter the deputy clerk to whom had been entrusted the undertaking arrived at the office and delivered the bond to a fellow-deputy, who placed it in its proper receptacle and made in the proper books the entry of its filing. It was held by the supreme court that the filing of the undertaking was not in time.

In *Rauer etc. Co.* v. *Standley,* 3 Cal. App. 44, [84 Pac. 214], December 1, 1905, was the last day upon which an undertaking on appeal could be filed, and no such undertaking was filed until the fifth day of December, 1905, which was too late unless the time had been extended. Attached to the undertaking was a paper signed by the judge of the superior court and dated December 1, 1905, granting to appellant to and including December 6, 1905, in which to file its undertaking, but it was held by the court that any order extending the time would be unavailing unless presented for filing at the office of the clerk before the time for filing the undertaking on appeal had expired.

[2] The taking of the claims by the attorney for plaintiff for presentation to the judge after their delivery to the deputy county clerk for filing did not constitute such a withdrawal of the claims as to destroy the effect of such previous presentation for filing. In the case of *Wilkinson* v. *Elliott,* 43 Kan. 590, [19 Am. St. Rep. 158, 23 Pac. 614], the attorney for plaintiff on May 21, 1883, presented a petition praying for a divorce to the clerk of the district court. He did not ask for, or obtain, the issuance of summons. The clerk placed his file-marks on the petition, when it was immediately thereafter taken by counsel for plaintiff from the possession of the clerk, who retained it until May 25, 1883. It was held by the supreme court of Kansas that under these facts there was not a sufficient filing. That when a party temporarily hands a petition to the clerk of the district court, in order that he may place his file-marks thereon, and not for the purpose of allowing it to remain in official custody as a permanent record, and he does not ask for, or obtain, the issuance of summons, but holds the petition in his own possession away from the record, the action is not pending, within the meaning of the statute on *lis pendens.*

In the case at bar the claims were left with the clerk of the court, who had them in his possession until they were taken to the judge of the superior court.

[3] Complaint is made by appellant that the claims fall within the statute of frauds and that the writing received in evidence is not a sufficient memorandum within that statute.

It is true that it is alleged in the claims that the said Conrad Iser promised to pay the plaintiff for the services upon his death, but neither of the claims is based on this promise. The nonperformance of the contract is expressly alleged and the claims are founded on a *quantum meruit.* The case is one to establish a claim for the reasonable value of services.

Even conceding that the contract is within the statute of frauds and that the services were rendered under an invalid oral contract, respondent was still entitled to recover by reason of full performance on his part, as neither the law nor equity will permit the statute of frauds to be used as an instrument of, or a shield for, fraud.

In *Arguello* v. *Edinger,* 10 Cal. 150, 158, Justice Field, speaking for the court, said: "So, where a verbal contract has been so far performed, by one of the parties, relying upon the good faith of the other, that he could have no adequate remedy except by complete performance, courts of equity decreed its execution, upon the ground that the refusal to execute the same under such circumstances was a fraud, and that a statute having for its object the prevention of fraud could not be used as an instrument for its perpetration."

In *Seymour* v. *Oelrichs,* 156 Cal. 782, 794, [134 Am. St. Rep. 154, 106 Pac. 88, 94], it is said: "The right of courts of equity to hold a person estopped to assert the statute of frauds, where such assertion would amount to practicing a fraud, cannot be disputed. It is based upon the principle, 'thoroughly established in equity, and applying in every transaction where the statute is invoked, that the statute of frauds, having been enacted for the purpose of preventing fraud, shall not be made the instrument of shielding, protecting or aiding the party who relies upon it in the perpetration of a fraud or in the consummation of a fraudulent scheme.' (2 Pomeroy's Equity Jurisprudence, sec. 921.) It was said in *Glass* v. *Hulbert,* 102 Mass. 24, 35, [3 Am. Rep. 418]: 'The fraud most commonly treated as taking an agreement out of the statute of frauds is that which consists in setting up the statute against its enforcement, after the other party has been induced to make expenditures, or a change of situation in regard to the subject matter of the agreement, or upon the supposition that it

was to be carried into execution, and the assumption of rights thereby to be acquired; so that the refusal to complete the execution of the agreement is not merely a denial of rights which it was intended to confer, but the infliction of an unjust and unconscientious injury and loss. In such case, the party is held, by force of his acts or silent acquiescence, which have misled the other to his harm, to be estopped from setting up the statute of frauds.' This statement has been accepted as setting forth a plain and satisfactory ground for equitable jurisdiction, together with a clear indication of the proper limitation of its exercise. (See 5 Browne on Statute of Frauds, sec. 457a.) In the section last cited, Mr. Browne says: 'A plaintiff . . . must be able to show clearly . . . not only the terms of the contract, but also such acts and conduct of the defendant as the court would hold to amount to a representation that he proposed to stand by his agreement and not avail himself of the statute to escape its performance; and also that the plaintiff, in reliance on this representation, has proceeded, either in performance or pursuance of his contract, to so far alter his position as to incur an unjust and unconscientious injury and loss, in case the defendant is permitted after all to rely upon the statutory defense. After proof of this, the court may well be justified in using its undoubted power, in cases of equitable estoppel, to refuse to listen to a defendant seeking to deny the truth of his own representations previously made.' We can see no good reason for limiting the operation of this equitable doctrine to any particular class of contracts included within the statute of frauds, provided always the essential elements of an estoppel are present, or for saying otherwise than as is intimated by Mr. Pomeroy in the words already quoted, viz.: that it applies 'in every transaction where the statute is invoked.' It is a general equitable principle, a part of the broader equitable doctrine stated in *Dickerson* v. *Colgrove,* 100 U. S. 580, [25 L. Ed. 619, see, also, Rose's U. S. Notes], and quoted therefrom in *Carpy* v. *Dowdell,* 115 Cal. 687, [47 Pac. 695], as follows: 'The vital principle is that he who by his language or conduct leads another to do what he would not otherwise have done shall not subject such person to loss or injury by disappointing the expectations upon which he

acted. Such a change of position is sternly forbidden. It involves fraud and falsehood, and the law abhors both.' ''

[4] But the written memorandum above referred to is, in our opinion, a valid and sufficient written contract to pay the reasonable value of the services rendered by the plaintiff. It is an express written promise by Conrad Iser to pay Adam Keller for such services rendered in nursing him during his illness, which ended with his death, and no oral evidence is necessary to complete the contract. There being no provision for the measure of compensation, the law implies the promise to pay the reasonable value thereof.

This written memorandum, the court found, was signed by Conrad Iser on or about the seventh day of January, 1917, and among other things it provides as follows: "And besides I will pay to Mr. Adam Keller extra for his services for nursing during the time of my sickness." This is a sufficient acknowledgment of his indebtedness to plaintiff and sufficient to take plaintiff's claim out of the bar of the statute of frauds.

[5] Appellant contends that the testimony of Dr. W. A. Briggs and Dr. George A. Foster was privileged, and hence inadmissible, under section 1881, subdivision 4, of the Code of Civil Procedure, which provides that: "A licensed physician or surgeon cannot, without the consent of his patient, be examined in a civil action as to any information acquired in attending a patient, which was necessary to enable him to prescribe or act for the patient."

We do not think that the testimony of these physicians was inadmissible under the said provision of the statute. Their testimony was simply as to the general character and value of the services rendered by the plaintiff as nurse and not as to any information acquired in attending the patient which was necessary to enable them to prescribe or act for the patient, and under section 1881 of the Code of Civil Procedure a physician is precluded from being examined as a witness only "as to information acquired in attending the patient which was necessary to enable him to prescribe or act for the patient." (*Estate of Black,* 132 Cal. 392, 396, [64 Pac. 695]; *Harris* v. *Zanone,* 93 Cal. 59, 71, [28 Pac. 845]; *In re Redfield,* 116 Cal. 644, [48 Pac. 794].)

But conceding that this testimony was privileged under section 1881, subdivision 4, of the Code of Civil Procedure,

it would not furnish a sufficient ground for a reversal of the judgment, as it was harmless for the reason that other witnesses testified substantially to the same facts, and under section 4½ of article VI of the constitution, "No judgment shall be set aside or new trial granted, in any case, on the ground . . . of the improper admission or rejection of evidence . . . unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice."

In view of the foregoing we deem it unnecessary to pass upon the other questions argued in the briefs.

The judgment is affirmed.

Hart, J., and Burnett, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on December 6, 1920.

All the Justices concurred.