[Civ. No. 4721. Second Appellate District, Division Two.—March 27, 1928.]

E. A. STOWE, Respondent, v. FAY FRUIT COMPANY (a Corporation), Appellant.

Henry O. Wackerbarth, Henry E. Carter and Joseph A. Adair for Appellant.

U. F. Lewis and R. C. Alford for Respondent.

WORKS, P. J.—This action is one to recover the selling price of a crop of oranges alleged to have been sold to defendant, but which, for reasons which are shown by the evidence, was never delivered. Judgment went for plaintiff, and defendant appeals.

Appellant contends that several of the findings of the trial court were unsupported by the evidence. Whether some of them were supported depends upon a purely legal question: Was the contract for the sale of the fruit within the statute of frauds? Section 1624 of the Civil Code, subdivision 4, is pointed to as the enactment under which it is said that the agreement was invalid. The section provides what contracts must be in writing, and subdivision 4, so far as its language is material here, reads: "An agreement for the sale of goods, chattels, or things in action, at a price not less than two

hundred dollars, unless the buyer accepts or receives part of such goods and chattels . . . or pays at the time some part of the purchase-money . . . ''

The evidence in the present case plainly shows—in truth, it is conceded by counsel—that the selling price of the oranges was much more than $200, and it is equally certain that the contract was not in writing. Respondent insists, however, that at the time the agreement was attempted to be made there was a completed sale of the oranges and that they were accepted or received by appellant, and that appellant then paid a part of the purchase money.

■ The contract, such as it was, originated in a conversation between respondent and the manager of one of appellant's packing-houses. It occurred in the orange orchard of respondent, and the fruit concerning which the two talked was on the trees. The conversation occurred on Friday, the sixth day of a certain January, and it was related on the witness-stand by respondent. The manager examined the fruit and offered two and a quarter cents a pound for it. Respondent asked for two and a half cents, and the manager finally said, ''I will give you two and a half.'' Respondent then asked, ''When can I commence picking?'' Respondent's testimony then goes on: ''He said, 'Monday morning.' That was the 9th. He bought them on the 6th. That was the 9th day of January I was to commence picking. He said, 'Come in and get the boxes Saturday afternoon,' but he called up Saturday afternoon and told me not to come until Monday morning.'' It was developed during the cross-examination of respondent that during the conversation on the sixth the manager said that he ''wanted to buy'' the oranges and that ''the conversation which took place [on that day] was that [respondent] would sell the fruit for two and a half cents per pound delivered f. o. b. the packing house.'' The testimony thus set forth is the only evidence of the contract between the parties. Nothing more was said during the conversation on January 6th, nor was anything ever said at any other time, which at all touched the terms of the agreement made or attempted to be made between them.

It is plain that there was no completed sale on the sixth and that appellant did not accept or receive the oranges within the meaning of the statute of frauds. In contending

that there was a sale and that the fruit was accepted or received, respondent relies on *Bill* v. *Fuller*, 146 Cal. 50 [79 Pac. 592], and *Miller* v. *Hunt, Hatch & Co.*, 47 Cal. App. 768 [191 Pac. 75], and on cases from other states. None of these cases is in point. The two California cases are mentioned and distinguished in the opinion in *MacRae* v. *Heath*, 60 Cal. App. 64 [212 Pac. 228], and the latter case is itself an all-sufficient answer to respondent's contention. We think, under the doctrine of that case, as the fruit covered by the contract before us was on the trees when the contract was made, and as it was to be delivered by respondent, at his own expense, at the packing-house, that the parties contemplated a future sale and that the fruit was to be both accepted and received when it arrived at the packing-house and not before.

As already remarked, respondent also contends that the contract is taken out of the statute of frauds because "some part of the purchase money" was paid. This point arises under the following circumstances, disclosed by the testimony of respondent: Some time after the conversation which evidences the contract, apparently as much as a week thereafter, respondent appeared at the packing-house of appellant. The manager was present at the time and said, when he saw respondent: "I know what you want; you want some money." Respondent answered that he did, and added, "that is what I sold the fruit for, because I want some cash." The manager then remarked, "Very well, I will get you $250 in the next two or three days." Respondent testified that "in the next two or three days he received a check for $250 from" appellant. Other evidence shows that the check came to his hands on January 18th. We think this payment was wholly inadequate to take the case out of the statute. Subdivision 4 of section 1624 of the Civil Code provides that the payment of a part of the purchase money for chattels, in order to have the effect ascribed by the appellant to the payment made here, must be made "at the time," and this language, upon the very face of the statute, contemplates a payment at the time a contract is made, a payment, in common parlance, to "bind the bargain" (27 C. J. 253). It is said at the place cited that in order that a payment made after the completion of the contract may take the case out of the statute, "There must be enough in addi-

tion to the fact of payment to show that the terms of the prior oral contract were then in the minds of the parties, and were reaffirmed by them,'' that is, for the purpose of avoiding the statute. It is further there said that ''this being shown a cause of action arises, not on the prior oral contract, but on the new contract made at the time of the payment.'' There is no room for the application of such a doctrine here.

We are satisfied that the contract attempted to be made by the parties was invalid under the statute of frauds. Respondent insists, however, that appellant is estopped to avail herself of the defense afforded by the enactment. The doctrine of estoppel is invoked because of the following circumstances disclosed by the record. We have already seen that, at the time the contract between the parties was attempted to be concluded, it was understood that respondent was to begin picking his fruit on January 9th, that he was to get boxes from appellant for the purpose on the 7th, and that on the last-mentioned date the manager of the packing-house asked him not to come for the boxes until the 9th. This delay was caused by the fact that appellant did not have the requisite boxes on hand, and the same condition persisted until January 18th, when respondent received the check for $250. In the interim, at intervals of two or three days, respondent inquired of the manager about the boxes and on each occasion was told that they were not yet to be had. Respondent at no time protested against this state of affairs or at the delay which was occasioned by it. Both of the parties appear merely to have sat by in a state of quiescence and satisfaction, awaiting the time when the boxes might be had and when the fruit could be picked and placed in them. Unfortunately, on January 19th, the next day after respondent received the check for $250, a cold snap came on and the crop was frozen. Respondent refused to take it. Not only so, but by virtue of the provisions of the statute referred to in *MacRae* v. *Heath, supra,* the fruit became unmarketable under the law and it became as impossible for respondent to move it to the packing-house as it was for appellant, on its own judgment, to receive it.

In his resort to the protection of the estoppel for which he contends, appellant cites *Pearsall* v. *Henry,* 153 Cal. 314

[95 Pac. 154], *Seymour* v. *Oelrichs,* 156 Cal. 782 [134 Am. St. Rep. 154, 106 Pac. 88], *Heffernan* v. *Davis,* 24 Cal. App. 295 [140 Pac. 716], *Flint* v. *Giguiere,* 50 Cal. App. 314 [195 Pac. 85], and *Stepp* v. *Williams,* 52 Cal. App. 237 [198 Pac. 661]. There are also to be found the following cases in which such an estoppel was successfully invoked: *Keller* v. *Gerber,* 49 Cal. App. 515 [193 Pac. 809], *Price* v. *Smith, Mfg. Co.,* 53 Cal. App. 303 [200 Pac. 53], *Rundell* v. *Mc-Donald,* 62 Cal. App. 721 [217 Pac. 1082], *Holstrom* v. *Mullen,* 84 Cal. App. 1 [257 Pac. 545], and *Angelus Leasing Co.* v. *Stephens,* 87 Cal. App. 260 [261 Pac. 1038]. In this entire catalogue of cases, from *Pearsall* v. *Henry,* the first in point of time—although there are earlier ones which are not presented in the list—to *Angelus Leasing Co.* v. *Stephens,* the last, there is not one which justifies the application of the doctrine of estoppel in the present instance. The statute of frauds is an enactment of a highly beneficial nature, designed to prevent those frauds and perjuries which are so likely to be committed in the consummation and enforcement of concords between men which are not reduced to written form. ■ A reliance upon the statute cannot be prevented under the law—and each of the cases cited above bears witness to the truth of the statement—even upon the salutary principles which support the doctrine of estoppel, unless he who seeks to hide behind the statute would use it as the means whereby frauds may be committed by him, or unless representations made or acts done by him, even if innocent in themselves, have induced the other party to the attempted oral pact to make expenditures in and about the subject matter of the agreement, or so to change his position with relation thereto that he will suffer material loss if the plea of the statute is allowed. ■ This rule cannot apply to the state of facts now before us. Appellant is not shown by the evidence to have committed any act, between January 6th and January 19th, which by the highest flight of the imagination could be said to be unfair or unjust to respondent.⟩ On the other hand, appellant was not induced by any act of respondent to make any expenditure whatever, nor to put himself in any position which by his assumption of it could have caused him any loss whatever. He merely heard the statements of respondent's manager that boxes were not available for the orange picking, and there he

sat. The freeze of January 19th, which caused all the trouble, was a circumstance, of course, utterly apart from the acts of either of the parties. It was but an aberration in the conduct of Dame Nature, who, even in Southern California, sometimes forgets her smile and displays a petulant frown. But for her unseemly intervention, distasteful alike to appellant and to respondent, they two would doubtless have performed in peace and amity the obligations they respectively attempted to assume by their oral concord, invalid under the statute of frauds or not. It was said in *Seymour* v. *Oelrichs, supra,* in applying the doctrine of estoppel for which respondent contends here, the italics being ours: "We can see no good reason for limiting the operation of this equitable doctrine to any particular class of contracts included within the statute of frauds, *provided always the essential elements of estoppel are present* . . . " This language has been quoted in several of the later cases. We have no difficulty in reaching the conclusion that "the essential elements of estoppel" are not present in the record before us.

But one further point remains to be considered. Appellant endeavored by cross-complaint to recover the $250 paid by it to respondent, but judgment went that it take nothing. The facts which bear upon this phase of the litigation were not disputed, and we think, after all we have said above, that the findings upon which judgment was rendered against appellant on its cross-action were not supported by the evidence. It seems manifest that appellant is entitled to a return of the amount of the check delivered by it to respondent. The property which was the subject of the attempted contract having been destroyed and the ability of respondent to perform having thus been terminated—indeed, the oral concord between the parties having been void under the statute of frauds—respondent cannot be allowed, under the facts shown by the record, to retain the money he received.

Judgment reversed.

Thompson, J., and Valentine, J., *pro tem.,* concurred.