[Civ. No. 3323.   Fourth Dist.   Aug. 11, 1944.]

MATMOR OLIVE COMPANY (a Corporation), Plaintiff and Appellant, v. E. B. DU BOIS, Defendant and Appellant.

H. M. Dunham and Wright, Thomas & Dorman for Plaintiff and Appellant.

Luce, Forward, Lee & Kunzel for Defendant and Appellant.

BARNARD, P. J.—On November 11, 1941, the plaintiff agreed to purchase a crop of olives, estimated at 300 tons, growing on land owned by the defendant in San Diego County. The plaintiff, whose place of business was in Tulare County, agreed to pick the olives at its own expense, to begin picking about December 1, 1941, to complete the same within 60 days, and to pay $135 per ton for the olives "on the trees." The plaintiff paid to the defendant in advance $15,000, being $50 a ton on the estimated crop, and it was agreed that as each ton of olives was delivered $50 from this advance payment should be applied thereon and the balance of $85 should be paid through an arrangement made with a bank. It was agreed that when the entire crop was picked any part of this $15,000 which had not been thus applied should be repaid to the plaintiff.

The plaintiff began picking on December 7, 1941, and ceased operations shortly prior to February 15, 1942. It picked and removed 165.525 tons of olives which were fully paid for in the manner agreed upon.

The plaintiff brought an action in Tulare County in the form of a common count to recover the balance of the $15,000 advance payment, since only about 165 tons had been taken. It also filed another action in that county seeking damages on the ground that the defendant had interfered with its pickers.

On motion of the defendant these two actions were transferred to San Diego County.

The defendant then answered the first of these actions denying that he owed anything to the plaintiff and setting up, as a plea in abatement, that two separate actions growing out of the same contract had been filed for the purpose of vexing and annoying him. He also answered the second action denying the allegations of the complaint, setting up the same plea in abatement, and including a so-called "counterclaim," which was in fact a cross-complaint, in which he set forth the contract of November 11, 1941, alleged that the plaintiff had failed to pick and pay for some 135 tons of olives which it had agreed to take, and further alleged that the plaintiff was indebted to him in the amount of $350 as rental for certain ladders. He prayed for a judgment for $18,241 for the first of these items and $350 for the second item.

The two actions were consolidated for trial over the objection of the defendant, although he had pleaded in each that they had been improperly separated. After a first trial a new trial was granted on stipulation of the parties, and the action was again tried before a different judge. The plaintiff abandoned its cause of action for damages and stipulated that the defendant was entitled to $350 as rental for the ladders. The court found that the plaintiff had picked and taken 165.525 tons of olives which had been fully paid for in accordance with the agreement; that when the contract was entered into there were not less than 300 tons of olives on the trees; that "enough were dropped to the ground by wind in a storm that occurred on December 23, 1941, or from other natural causes without the fault of the plaintiff, so that of such original 300 tons or thereabouts, . . . there remained only 200 tons to be accounted for"; that of said 200 tons 165.525 tons were removed and paid for; that the remaining 34.475 tons were either left on the trees or dropped by the pickers and not picked up; that the agreed price for these 34.475 tons amounted to $4,654.13; and that the defendant became entitled to this sum and to $350 for the ladders, a total of $5,004.13. It was then found that the plaintiff was entitled to $6,723.75 as the unused balance of the original payment of $15,000, and that the plaintiff was entitled to a judgment for the difference, or $1,719.62. Judgment was entered ac-

cordingly and the plaintiff and the defendant have each appealed therefrom.

On his appeal the defendant contends that he was entitled to be paid for an additional 100 tons of olives, and that the judgment is inconsistent with and unsupported by the findings since it was found that 100 tons of olives were lost by reason of a storm on December 23, 1941, or from other natural causes, and since it appears that this loss occurred while the plaintiff was in possession of the groves and picking the crop. It is argued that the court erroneously concluded and held that title to the lost olives had not passed to the purchaser; that although one paragraph seems to declare that both possession and title were to remain in the seller, the contract as a whole discloses a different intention since the buyer agreed to pick all of the olives on the trees and since title was reserved only for the purpose of protecting the seller from any default of the buyer; and that it must be held as a matter of law that the contract, viewed as a whole, provided that the buyer must pay for 300 tons of olives regardless of what happened to them. The defendant relies on such cases as *Firebaugh* v. *Thomas*, 137 Cal.App. 709 [31 P.2d 425]; *Miller* v. *Hunt, Hatch & Co.*, 47 Cal. App. 768 [191 P. 75]; *Brietengross* v. *Theodore Krumm, Inc.*, 35 Cal.App.2d 639 [96 P.2d 370]. Those cases are not controlling here. They involved either contracts or facts showing that title had passed to the purchasers, or that they had assumed the risk of loss.

Briefly summarized, the contract here in question provides: "The seller agrees to sell and the buyer agrees to buy" a crop of olives "upon the terms and conditions expressed herein." Delivery of the crop and all thereof "shall be upon the trees in the grove" and the buyer is to pay all expenses of every kind. The buyer is to pick the crop commencing about December 1, 1931, and not later than December 5, 1941. The seller may have the olives weighed at the ranch or at a public scale. Certain trees are to be picked by hand and the crop on others may be harvested with light switches. The crop is estimated at 300 tons and the buyer is to pay $135 per ton "on the trees." The contract then provides: "Payment shall be made of the amount set forth above, per ton, for all olives, before they leave the possession of seller, . . . such payment to be made not later than the time when the weight of each shipment is ascertained.

Title to all olives shall remain in the seller and shall pass to the buyer only when such payment is made for each shipment. The buyer hereby assumes all risk of loss of damage to the fruit from any cause whatever, after such fruit has been picked from the trees.''

The contract was clearly executory and provided for the delivery and acceptance only of such olives as were picked or removed from the trees. It provided for delivery and acceptance at the time of picking and upon weighing the olives, and it is specifically provided that title shall remain in the seller and shall pass to the buyer only as payment is made for particular deliveries, and that the buyer assumes the risk of loss after the fruit has been picked from the trees. This clearly indicates that the risk of loss up to the time the fruit is picked from the trees shall fall upon the seller. Not only is the interpretation placed upon the contract by the trial court a reasonable one but no other interpretation was justified by the language of the agreement.

The defendant further contends that he should have been awarded his costs in the trial court. He misconstrues one statement in the judgment and argues therefrom that the judgment is inconsistent with the findings and conclusions of law. In brief, it is argued that if the judgment had been consistent with the findings and conclusions of law it would have awarded the defendant on his two counterclaims a total of $5,004.13 and would have allowed the plaintiff $1,719.62, with the result that there would have been a balance in favor of the defendant of $3,284.51, making him the successful party. The contention is without merit. Under any proper construction of the language used in the findings and judgment the necessary result is an allowance to the plaintiff of $6,723.75 and one to the defendant of $5,004.13, with a balance of $1,719.62 in favor of the plaintiff. In this regard, the defendant was not entitled to his costs.

It is also contended that the defendant was entitled to reimbursement for $16 paid by him to the clerk as costs of transfer of the actions from Tulare County to San Diego County. This should have been repaid to the defendant, but was not, and seems to have been overlooked. The judgment in favor of the plaintiff should be modified by deducting $16 therefrom.

On its appeal the plaintiff contends that the judg-

ment which, in effect, allows the defendant payment for 34.475 tons of olives is based on findings which go beyond the issues as framed by the pleadings and which are inconsistent with other findings, and is, therefore, erroneous. The argument in this connection is that it was alleged in the defendant's cross-complaint that at the time picking operations were begun there were 250 tons of olives on the trees and 50 tons upon the ground under the trees; that the plaintiff was obligated to purchase only olives that were on the trees; that the court found that 100 tons had fallen from natural causes without the fault of the plaintiff; and that the plaintiff has picked and paid for 165.525 tons. It is then argued that in using the figure of 300 tons as being on the trees at the time when the contract was signed the court ignored the pleadings which showed that only 250 tons were to be accounted for, that 265 tons were accounted for in the amounts taken and paid for by the plaintiff and the 100 tons dropped to the ground, and that it follows that there could not have been about 34 tons with which the plaintiff was charged.

Not only was the allegation in the cross-complaint, to which we have referred, denied by the plaintiff, but it clearly appears that the court did not find that 100 tons of olives had dropped after picking operations were begun. The court found that there were not less than 300 tons of olives on the trees when the contract was signed, that enough dropped in a storm on December 23, 1941, or from other natural causes, so that of the original 300 tons there remained only about 200 tons to be accounted for. If we assume that 50 tons dropped before picking commenced then only 50 tons dropped thereafter. In any event, it was found that only 200 tons remained to be accounted for and the findings as a whole are perfectly consistent with and support the judgment.

It is further urged that the evidence is insufficient to support the finding that 34.475 tons of olives were left on the trees by plaintiff's figures or dropped and not saved by them. A portion of the evidence is relied on in this connection. Assuming that this portion supports the plaintiff's position, the most that can be said is that it is in conflict with other portions of the evidence. A careful examination of the record discloses ample support for the finding in question.

The judgment in favor of the plaintiff for $1,719.62 is modified by deducting $16 therefrom and as thus modified and reduced to $1,703.62 the judgment is affirmed. Each party to pay his own costs on appeal.

Griffin, J., concurred.